18 Civ. 3858 (ALC) (HBP)

_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

K.A. and D.S., individually and on behalf of a class of
all others similarly situated,

              Plaintiffs,

      -against-

THE CITY OF NEW YORK, NEW YORK CITY HEALTH
AND HOSPITALS CORPORATION, PHYSICIAN AFFILIATE
GROUP OF NEW YORK, P.C.,ANASTASIA BLACKMON,
and DR. "JANE" VESSEL,

             Defendants.

_____

MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT

_____

HELD & HINES, LLP
*Attorneys for Plaintiff*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

By:   Philip M. Hines, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...………………………i

PRELIMINARY STATEMENT………………………………………………………………….....1

STATEMENT OF FACTS……………………………………………………………………….....2

STANDARD OF REVIEW………………………………………………………………………..5

POINT I

     THE MOTION IS PROCEDURALLY DEFECTIVE IN THAT IT FAILS TO COMPLY WITH S.D.N.Y. LOCAL CIVIL RULE 7.1(a)……………………………………………….………..7

POINT II

     THE DEFENDANTS' ALLEGATION THAT THE PLAINTIFFS FAILED TO COMMENCE THIS ACTION WITHIN THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS IS MERITLESS………………………………………………………………………………...8

POINT III

     THE DEFENDANTS CLAIM THAT THE PLAINTIFFS AND PUTATIVE CLASS MEMBERS' COMPENSATORY DAMAGES CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT COULD NOT BE FURTHER FROM THE TRUTH………….10

POINT IV

     THE PLAINTIFFS PLAUSIBLY ALLEGED DEPRIVATIONS OF MEDICAL CARE……...14

POINT V

     THE PLAINTIFFS AND CLASS MEMBERS STATE A VIABLE CLAIM OF DEPRIVATION OF THEIR FREE EXERCISE OF RELIGION, RENDERING THE DEFENDANTS' ALLEGATION OTHERWISE MOOT……………………………………………………………17

POINT VI

     THE AMENDED COMPLAINT STATES A VIABLE CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT…………………………………18

POINT VII

     THE PLAINTIFFS PLAUSIBLY STATE A *MONELL* CLAIM………………………………19

POINT VIII

THE PLAINTIFFS AND CLASS MEMBERS SATISFY COLON SO AS TO WARRANT THE IMPOSITION OF LIABILITY AGAINST THE DEFENDANTS ANASTASIA BLACKMON AND DR. "JANE" VESSEL.……………………………………………………………………20

POINT IX

THE PLAINTIFFS SATISFY RULE 23 FOR CLASS CERTIFICATION……………………23

CONCLUSION………………………………………………………………………………..25

## <u>TABLE OF AUTHORITIES</u>

<u>Case Law</u>

*Abney v. McGinnis,*
    380 F.3d 663 (2d. Cir. 2004)…………………………………………………..……11

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)…………………….…………………….....6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007)……………………………..……………….6

*Booth v. Churner,*
    532 U.S. 731 (2001)……………………….………………………………………..13

*Bryant v. Maffucci,*
    923 F.2d 979 (2d Cir.1991)…………………………..……………………………..22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)………………………………………………………….....11

*Chance v. Armstrong,*
    143 F.3d 698 (2d Cir. 1998) …………………………..……………….....14-16

*City of Oklahoma v. Tuttle*
    471 U.S. 823 (1985)…………………………………………………...……20

*Colon v. Coughlin*
    58 F.3d 865 (2d Cir. 1995) ………………………………...…………….20, 21, 23

*Connecticut v. Am. Elec. Power Co.,*
    582 F.3d 309 (2d Cir. 2009)………………………………………...……………..5

*Connick v. Thompson,*
    563 U.S. 51 (2011)…………….……………………………………..……………20

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)………………………………………..…………..23

*Contrera v. Langer*
    290 F.Supp 3d 269 (S.D.N.Y. 2018)…………………………………………….8

*Cornwell v. Robinson,*
    23 F.3d 694 (2d Cir. 1994)………………………………………..…………..9

*Davidson v. Cannon,*
    474 U.S. 344, 106 S.Ct. 668 (1986)……………………..……………..……………21

*Estelle v. Gamble*,
    429 U.S. 97 (1997)……………………………………………………...…….4,15

*Ferguson v. Cai*,
    No. 11-cv-6181 (PAE), 2012 WL 2865474 (S.D.N.Y. July 12, 2012)…………………………14

*Ford v. McGinnis*,
    352 F.3d 582 (2d Cir. 2003)………………………………..……………...11, 17

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir. 1980)……………………………………………………6

*Guo v. IBM 401(k) Plus Plan*,
    95 F.Supp.3d 512 (S.D.N.Y. 2015)………………………………………………10

*Hemmings v. Gorczyk*,
    134 F.3d 104 (2d Cir. 1998) …………………………………………..……16

*Hill v. Curione*,
    657 F.3d 116 (2d Cir. 2011)…………………………………………………15, 16

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)…………………………………………………..24

*In re NYSE Specialists Dec. Litig.*,
    503 F. 3d 89 (2d Cir. 2007)…………………………………………………11

*Jaghory v. N.Y. State Dept. of Educ.*,
    131 F.3d 326 (2d Cir. 1997) …………………………………………………5

*Jenkins v. Haubert*,
    179 F3d 19 (2d Cir. 1999)…………………………………………………10

*Johnson v. Testman*,
    380 F. 3d 691 (2d Cir. 2004)…………………………………………………11

*Johnson v. Wright*,
    412 F.3d 398 (2d Cir. 2005)…………………………………………………14

*Jones v. Bock*,
    549 U.S. 199 (2007)…………………………………………………….......11

*Kerr v. Puckett*,
    138 F.3d 321 (7th Cir. 1998)…………………………………………………..…12

*Kuklachev v. Gelfman*,
    600 F. Supp. 2d 437 (E.D.N.Y. 2009)………………………………………………6

*LaBounty v. Adler*,
    933 F.2d 121 (2d Cir. 1991)..…………………………….…………………………………5

*Mata v. Saiz*,
    427 F.3d 516 (7th Cir. 2008)…………………………………………………………………16

*Matson v. Bd. of Educ.*,
    631 F.3d 57 (2d Cir. 2011) …………………………………………………………………5-6

*McCoy v. Goord*,
    255 F. Supp. 2d 233 (S.D.N.Y. 2003)…………………………………………….....11

*McGuckin v. Smith*,
    974 F.2d 1050 (9th Cir. 1992)…………………..……………………….....................14, 21

*McNeill v. N.Y.C. Hous. Auth.*,
    719 F. Supp. 233 (S.D.N.Y. 1989)……………………………………………………24

*Meriwether v. Coughlin*,
    879 F.2d 1037 (2d Cir.1989)…………………………………………………………21

*Monnell v. Department of Social Services of the City of New York*,
    436 U.S. 658 (1978)……………………………………………………………………19-20

*Morris v. Eversley*,
    343 F. Supp.2d 234 (S.D.N.Y. 2004)……………………………………….. …………12

*O'Lone v.Estate of Shabazz*,
    482 U.S. 342, 107 S. Ct. 2400 (1987)…………………………………………………17

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)………………………………………………………...8

*Papasan v. Allain*,
    478 U.S.265 (1986) …………………………………………..………………...5

*Pension Ben. Guar. Corp., ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley*
*Perez v. Westchester County Dept. of Corr.*,
    587 F.3d 143 (2d. Cir. 2009)………………………………………………………14

*Poe v. Leonard*,
    282 F.3d 123 (2d Cir. 2002)………………………………………………….……21

*Porter v. Nussle*,
    534 U.S. 516 (2002)……………………………………………………………...11

*Roberts v. C-73 Med. Dir.*,
    2015 U.S. Dist. LEXIS 91072 (S.D.N.Y. 2015)…..…………………………………......14

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)…………………………………………………………14, 24

*Rose v. Masiey*,
    2008 U.S. Dist. LEXIS 20174 (S.D.N.Y. 2008)…………..…………………………………11

*Salahuddin v. Coughlin*,
    993 F.2d 306 (2d Cir. 1993) …………………………………………………………5

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)………………………………………………………………6

*Sheppard v. Beerman*,
    18 F.3d 147 (2d Cir. 1994)………………………………………………………11

*Sulton v. Wright*,
    265 F. Supp. 2d 292 (S.D.N.Y. 2003)………………………………………………...16

*Thomas v. Review Board, Indiana Security Division*,
    450 U.S. 707 (1981)………………………………………………………………...17

*Tsirelman v. Daines*,
    794 F.3d 310 (2d Cir. 2015) …………………………………………………………5

*Turner v. Safley*,
    482 U.S. 78 (1987)……………………………….…… …………………………...17

*Villager Pond, Inc. v. Town of Darien*,
    56 F.3d 375 (2d Cir. 1995)………………………………………………………...6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)………………………… …………………………………24

*Westbrook v. City Univ. of New York*,
    591 F.Supp.2d 207 (E.D.N.Y.2008)………………………………………………20

*Williams v. Edwards*,
    547 F.2d 1206 (5th Cir. 1977)………………………… …………………………...16

*Wright v. Smith*,
    21 F.3d 496 (2d Cir.1994)………………………… …………………………………21

Statutes

Federal Rules of Civil Procedure R. 12(b)(6)…………………………………………..…*Passim.*

42 U.S.C. 12102…………………………… ……………………………………………………..18-19
42 U.S.C. 1983………………………………………………………………………*Passim.*
42 U.S.C. 1997e(a)………………… ……………………………………………..13, fn. 4

<u>Rules</u>

S.D.N.Y. Local Civil Rule 7.1(a)……………………………………………………………7

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of the Plaintiffs and putative class members[1] in opposition to the Defendants' instant Motion to Dismiss the Amended Complaint ("Am. Cmpl.") pursuant to Fed. R. Civ. P. (FRCP) R. 12(b)(6). For the reasons set forth herein, it is respectfully requested that the Court deny the Defendants' Motion in its entirety, as the Plaintiffs have sufficiently pled plausible claims against each Defendant under 42 U.S.C. §1983, Title II of the Americans with Disabilities Act (hereinafter the "ADA"), and Section 504 of the Rehabilitation Act (hereinafter the "Rehab Act").

At issue herein is the Plaintiffs and class members' challenge to the Defendants' policy, custom, and practice of failing to provide female inmates at the Rose M. Singer Center (hereinafter "RMSC") at Riker's Island, New York, with access to safe and timely medical care. The Plaintiffs allege that the Defendants, by policy, custom, and practice, deny and delay female prisoners' access to adequate medical care by failing to employ and refusing to staff the RMSC clinic/infirmary with an adequate and appropriate number of female healthcare professionals or chaperones to accompany those female prisoners undergoing "intimate examinations" (defined as "any examination, investigation, or treatment that involves the rectum, genitalia or breasts"). This needlessly endangers female prisoners, requiring them to choose between (a) refusing/delaying treating in order to wait – weeks, at times – for a female healthcare professional or chaperone to become available while further risking the degenerative effects of prolonged lack of medical treatment and (b) proceeding with unchaperoned examinations at the risk of sexual assault, abuse, and harassment at the hands of male healthcare professionals and RMSC staff.

The Plaintiffs' First Amendment rights are also at issue herein. As it is against the religious beliefs of the Plaintiffs and some putative class members to expose their "intimate" areas to a man other

---

[1] The Plaintiffs and putative class members are women presently and previously confined to the custody and care of the New York City Department of Corrections at its Rose M. Singer Center, located at Rikers Island, New York. *See* Am. Cmpl., p. 1.

than their husband (including healthcare professionals) without a chaperone present, the Defendants thus unlawfully require the Plaintiffs and putative class members to choose between upholding their religious beliefs and the risks associated with refusing or delaying necessary medical treatment.

Due to the Defendants' failure to provide female healthcare professionals or chaperones to the Plaintiffs and putative class members, same have, on occasion, refused needed medical examinations and treatment, causing their conditions to deteriorate and further causing them to suffer physical injuries, emotional distress, and other damages. Likewise, as a direct and proximate result of the Defendants' failure to provide female healthcare professionals or chaperones to the Plaintiffs and class members, same have also, on occasion, proceeded with unchaperoned intimate examinations, during which they have been sexually assaulted, abused, and harassed by male healthcare professionals and RMSC staff, causing them to endure physical injuries, emotional distress, and other damages.

The Amended Complaint also seeks declaratory and injunctive relief regarding the Defendants' policies, procedures, customs and practices. *See*, Am. Cmpl., *ad damnum* clause.

## STATEMENT OF FACTS

The Plaintiffs and putative class members are myriad women confined, past and present, to the New York City Department of Corrections (NYCDOC) at its female-only jail on Rikers Island – the Rose M. Singer Center ("RMSC"). Although this action only asserts claims that arose since 2015, it is clear that for nearly a decade, female prisoners at RMSC have been deprived of the Constitution's guarantees of adequate and timely medical care and the free exercise of religion.

On October 13, 2010, DOHMH Correctional Health Services ("CHS")[2] implemented Policy #MED 2C, which provides as follows:

> **POLICY:**
> Any healthcare professional undertaking an intimate examination (defined

---

[2] Since at least 2010, CHS has been operated by the New York City Department of Health and Mental Hygiene, and then transferred to Corizon, Inc., as part of its contract with the City of New York to provide medical care to prisoners at Rikers Island, and then transferred to New York City Health and Hospitals Corporation. *See* Am. Compl. ¶¶11-13.

as any examination, investigation or treatment that involves the rectum, genitalia or breasts) will do so with the presence of a chaperone.

**PURPOSE:**
*Due to the nature of intimate examinations, there are occasions where there is the potential for abuse of a person in a vulnerable position*, and, conversely, for false allegations to be made. The purpose of this policy is to promote a comfortable setting for patients and to protect both patients and staff from abuse or allegations of abuse.

**PROCEDURES:**
1. The clinician responsible for the clinical encounter is responsible for securing a chaperone. A chaperone is a member of the clinic staff who is present for a clinical encounter that involves an intimate examination. When possible, the chaperone should be the same gender as the patient; however, the lack of a same gender chaperone should not preclude the use of a chaperone.

2. The chaperone may be part of the clinical encounter. Chaperones may assist with the clinical encounter if appropriate to their level of training and job title.

3. In the case of a medical emergency, if no chaperone is available to conduct the examination, the provider may proceed absent a chaperone provided that the clinician fully documents the circumstances in the medical record.

4. The name of the chaperone attending a clinical encounter must be entered as part of the medical documentation of the encounter by the M.D. or P.A. or nurse who is responsible for documenting the encounter.

*See* Am. Cmpl. ¶18 (emphasis added).

On or about November 14, 2014, CHS Medical Director Ross MacDonald, M.D., revised

DOHMH/NYCHHC Policy #MED 2C (hereinafter, the "Policy") as follows:

**POLICY:**
*To safeguard patients from potential abuse* and to safeguard providers from false allegations of abuse, any healthcare professional undertaking an intimate examination (defined as any examination, investigation or treatment that involves the rectum, genitalia or breasts) will do so with the presence of a chaperone.

*See,* Am. Cmpl. ¶19 (emphasis added)

The "Purpose" section of the policy was removed in the revision. The "Procedures" section was left

unchanged.

Given the policy language, the Defendants know that female prisoners are at risk of sexual assault, abuse and harassment by healthcare professionals, yet they failed to take necessary and appropriate action to protect the plaintiffs and putative class members.

In addition, the American Medical Association has issued numerous Code of Medical Ethics Opinions stating that medical providers should adopt policies that make chaperones available (irrespective of the appointment requiring an intimate examination) upon patient request, honor the patient's request to have a chaperone, and have an authorized member of the healthcare team serve as a chaperone.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the deprivation of health care to prisoners constituted cruel and unusual punishment. Since then, jails and prisons are mandated to provide all persons in custody with access to timely and appropriate medical care and a professional medical opinion. Additionally, jails and prisons are required to provide prisoners with medical care equivalent to that dispensed to the general public.

Women outside the NYCDOC jail system are always offered a chaperone during intimate examinations with their medical providers. Women outside of the NYCDOC jail system do not have to refuse treatment or reschedule an appointment for weeks later because a chaperone is unavailable for an intimate examination. Women outside of the NYCDOC jail system have a choice as to which medical provider to see and do not fear sexual victimization by them.

As plausibly alleged in the Amended Complaint, the Defendants' constitutional deprivations and violations abound. Despite being aware of same, the Defendants have made insufficient efforts curb these abuse, to hire female healthcare professionals, to assign female healthcare professionals to RMSC, or to staff the clinic with adequate chaperones for intimate examinations. The Defendants also failed to

implement and enforce appropriate supervision by and of their staff so as to prevent and remedy denial (actual and constructive) and/or delay of medical care to the Plaintiffs and putative class members.

Additionally, the Defendants have failed to enact adequate policies and procedures to protect the plaintiffs and putative class members from sexual innuendoes, vulgarity, degrading sexual comments, and propositioning, and to enforce those policies and procedures that do exist. For example, staff is not disciplined for violating these rules. As a result, such behavior by staff is commonplace, resulting in a hostile and sexualized atmosphere in which sexual harassment and abuse of female prisoners is more likely to occur. The Defendants have also failed to enact appropriate practices to protect the health, security, religious, disability, and privacy rights of the Plaintiffs and putative class members and to enforce those rules and policies that exist, resulting in violations of these same rights. For example, male healthcare professionals perform unchaperoned intimate examinations on female prisoners against official policy and are not disciplined or reprimanded for such misconduct. In fact, NYCDOC and NYCHHC/PAGNY staff, rather than allow a prisoner to wait for a female chaperone to become available or request a chaperone on behalf of the prisoner, routinely pressure the Plaintiffs and putative class members to waive their right to a chaperoned intimate examination in order to make their own lives easier (e.g., quicker clinic runs, fewer visits to clinics, less paperwork, etc.). In doing so, NYCDOC and NYCHHC/PAGNY staff regularly force the Plaintiffs and putative class members to choose between consenting to an unchaperoned intimate examination and going back to their cells without any examination whatsoever.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*,794 F.3d 310, 313 (2d Cir. 2015) (*quoting, Jaghory v. N.Y. State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) ); *see also, Papasan v. Allain*, 478 U.S. 265 (1986); *Matson v. Bd. of*

*Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (*quoting Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)); *Salahuddin v. Coughlin*, 993 F.2d 306 (2d Cir. 1993); and *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)); *see also*, *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-18 (2d Cir. 2013).

The Supreme Court has made it clear that a complaint may not be dismissed if there are sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (a complaint need only assert the grounds for the claim through factual allegations that suffice "to raise a right to relief above the speculative level.")). The question on a motion to dismiss, then, is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437 (E.D.N.Y. 2009) (*quoting*, *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)); *see also, Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) (the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."); *see also, Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

Taking the Plaintiffs' and putative class members' factual allegations as true and drawing all reasonable inferences in their favor, their claims are not only plausible but likely to succeed. A fair reading of the Amended Complaint reveals that the Plaintiffs and putative class members have alleged facts sufficient to state plausible claims against each of the Defendants herein. The movants fail to refute the facts alleged by documentary evidence or demonstrate how the Plaintiffs' and putative class members' claims are not plausible. Accordingly, a review of the Amended Complaint and case precedent makes clear that this

Court should deny Defendants' Motion to Dismiss in its entirety and allow the Plaintiffs' and putative class members' claims to proceed on their merits.

## **ARGUMENT**

### A)      THE MOTION IS PROCEDURALLY DEFECTIVE IN THAT IT FAILS TO COMPLY WITH S.D.N.Y. LOCAL CIVIL RULE 7.1(a)

As an initial matter, Defendants' Motion is procedurally defective, as it seeks dismissal on the pleadings alone yet fails to include a copy of the relevant pleadings.

Pursuant to S.D.N.Y. Local Civil Rule 7.1(a) entitled "Motion Papers,"

> (a) Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, *all motions shall include the following motion papers*:
>
> (1) A notice of motion, or an order to show cause signed by the Court, shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
>
> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and
>
> (3) *Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.*
>
> (emphasis supplied)

As sworn to by Martin Bowe in his Declaration accompanying the instant Motion, the Notice of Motion and Memorandum of Law in Support herein are accompanied only by "[t]he CHS Chaperone Policy…," "[t]ranscript excerpts," and a "…DOC report to the United States Department of Justice," Bowe Dec. ¶¶2-5, and do not include the very pleadings the Defendants are moving to dismiss. As it is axiomatic that the Complaint and Amended Complaint herein constitute key exhibits "containing [the] factual information and portions of the record necessary for the decision of the motion" per Local Civil Rule 7.1(a), the Movants' failure to include same in their motion papers is thus fatal.

In the event the Court declines to deny the instant Motion due to Movants' failure to meet the requirements of Local Rule 7.1, denial is still warranted for the reasons discussed *infra*.

B)   <u>THE DEFENDANTS' ALLEGATION THAT THE PLAINTIFFS FAILED TO COMMENCE THIS ACTION WITHIN THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS IS MERITLESS.</u>

a)   The Defendants' affirmative defense of statute of limitations is procedurally improper and substantively inadequate.

At best, the Defendants' affirmative defense of statute of limitations raises an issue of ambiguity requiring resolution in the Plaintiffs' favor. The Defendants improvidently allege that the operative date for the Plaintiffs' §1983 and ADA/Rehab Act causes of action is Feb. 4, 2015, and thus that the three-year statute of limitations ran on February 5, 2018. Defs. Mem. of Law p. 13. However, this is plainly controverted by the Amended Complaint, which unequivocally states that Plaintiff D.S. was sexually abused at RMSC between January 22 and April 18, 2018, and that Plaintiff K.A. was constructively denied medical care on several occasions during her incarceration from September 20, 2017, to April 2018. *See*, Am. Cmpl. ¶¶55-56. In light of the fact that this action was filed on May 2, 2018, it is apparent that the Plaintiffs' claims are well within the three-year statute of limitations period. As such, any further inquiry into the matter would require the Court to go beyond the corners of the Amended Complaint, in violation of *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) (holding it improper for courts to consider affirmative defenses raised via Fed. R. Civ. P. 12(b)(6) unless the veracity thereof appears clearly on the face of the complaint), and its progeny and would thus be improper at this juncture. *See also, Contrera v. Langer*, 290 F.Supp 3d 269, 278 (S.D.N.Y. 2018) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove; as such, at the motion to dismiss stage, a claim may be dismissed on statute of limitations grounds *only if* the defense appears on the face of the complaint.") (emphasis added).

Defendants are thus plainly wrong and improper in asserting that "the latest date that a Section 1983 or ADA cause of action accrued for [the Plaintiffs] is Feb. 4, 2015, [and thus,] the three-year statute of limitations ran on February 5, 2018." Defs. Mem. of Law p. 13.

b)    The Defendants take relevant dates and time out of context.

The Defendants misstate and misapply the Complaint and Amended Complaint's references to events that occurred from 2009 through 2015 and Mr. Hines' July 18, 2018, statements to the Court. Rather than seeking recovery for abuses occurring during these years, the Plaintiffs allege these specific instances of sexual abuse between 2009 and 2015 in ¶¶58 through 65 of their Amended Complaint under the heading "Policy Ineffective To Prevent Sexual Abuse During Non-Intimate Examinations" to demonstrate that even though the subject Policy was in effect since 2010, it was not an effective deterrent to sexual abuse in the clinic, as it was not being adhered to by staff and enforced by jail officials. Moreover, at the July 18, 2018, conference before this Court, Mr. Hines clarified any ambiguity, stating,

> MR. HINES:   The complaint, I think, clearly says that the claims are based upon things which occurred three years prior to the date of filing. The instances which are alleged, with regard to what happened in 2009, 2013 through '15, those are points of reference as to the ongoing or the City's knowledge and HHC's knowledge of past sexual abuse by clinic workers of the females that show up to the clinic.

> *See* Bowe Dec., Ex. B, p. 2, ln. 13-21.

The Defendants' claim that the statute of limitations has expired is thus mere obfuscation and must be disregarded as such.

c)    Notwithstanding, the statute of limitations is tolled by the continuing-wrong doctrine.

The Defendants' denial and delay of medical care continues to date, affording the Plaintiffs and putative class members the ability to apply the continuing-wrong doctrine so as to toll the statute of limitations. The Plaintiffs and putative class members maintain that the Defendants' denial and delay of medical care is unconstitutional on First, Fourth, Eighth, and Fourteenth Amendment grounds. As the Second Circuit Court of Appeals held in *Cornwell v. Robinson*, 23 F.3d 694, 704 (1994), "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was

a part of that violation, even conduct that occurred outside the limitations period." As such, the

Defendants' denial and delay of medical care as alleged constitutes a continuing unconstitutional policy

(i.e., "wrong"). The statute of limitations is thus tolled herein until such time that it is no longer

NYCDOC policy, rendering the Defendants' allegation moot. *See, e.g., Kahn v. Kohlberg, Kravis,*

*Roberts & Co.*, 970 F.2d 1030 (2d. Cir. 1992).

For the reasons aforesaid, the Defendants are not entitled to dismissal on statute of limitations

grounds.

C)   THE DEFENDANTS' CLAIM THAT THE PLAINTIFFS AND PUTATIVE CLASS
     MEMBERS' COMPENSATORY DAMAGES CLAIMS ARE BARRED BY
     THE PRISON LITIGATION REFORM ACT COULD NOT BE FURTHER
     FROM THE TRUTH

The Defendants argue that the Plaintiffs and class members are not entitled to compensatory

damages, alleging that they failed to suffer physical injury and exhaust their administrative remedies.

The Defendants could not be more wrong.

a)   The Defendants' affirmative defense of failure to exhaust is
     procedurally improper and substantively inadequate.

As set forth *supra*, "In adjudicating a motion to dismiss for failure to state a claim, a district

court *must* confine its consideration to facts stated on the face of the complaint, in documents appended

to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken[.]") *Guo v. IBM 401(k) Plus Plan*, 95 F.Supp.3d 512, 519 (S.D.N.Y. 2015) (emphasis

added). In adjudicating whether the Plaintiffs and class members have exhausted their administrative

remedies as required by the Prison Litigation Reform Act (PLRA), an affirmative defense, the Court is

thus bound to remain within the corners of the Amended Complaint.

The Defendants have not successfully established the affirmative defense of exhaustion of

remedies. The Second Circuit has construed the PLRA exhaustion requirement as an affirmative

defense, not a jurisdictional requirement. *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999). Therefore,

Defendants bear the burden of proof on exhaustion, *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003), and they have not met their burden. As the movants, the Defendants are required to establish by credible evidence in admissible form that the Plaintiffs and class members did not grieve and/or exhaust their administrative remedies. *See, Johnson v. Testman*, 380 F. 3d 691 (2d Cir. 2004); *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movants have failed to proffer any support for this position whatsoever, thus rendering further inquiry improper.

Notwithstanding, the Plaintiffs and putative class members were not required to plead exhaustion of remedies in their Complaint or Amended Complaint. The Supreme Court has held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 210 (2007). In this regard, the U.S. District Court for the Southern District of New York clearly held:

> The short answer to defendants argument, as we have previously observed, is that plaintiff is not obligated to allege his compliance with the exhaustion requirements of the Prison Litigation Reform Act, and it is the defendants burden to both plead this affirmative defense and to prove its applicability. The somewhat longer answer is that in any event (a) the allegations in Rose's complaints to which defendants seem to point as their basis for their argument do not clearly demonstrate that plaintiff failed to comply with the exhaustion requirement and (b) if he complied incompletely, the complaints do not preclude the application of one or more of the exceptions to complete exhaustion requirement recognized by the Second Circuit, if for example, corrections personnel prevented or interfered with an inmate's efforts to exhaust his remedies or simply ignored his grievance. *Rose v. Masiey*, 2008 U.S. Dist. LEXIS 20174 (S.D.N.Y. 2008) (Lynch, J.) (citing *Abney v. McGinnis*, 380 F.3d 663 (2d. Cir. 2004)).

In addition to being procedurally meritless, the Defendants' exhaustion allegation is substantively meritless. The PLRA prohibits *prisoners* from bringing federal court actions involving prison conditions until such administrative remedies as are available are exhausted. Such provision, commonly known as the PLRA exhaustion requirement, applies to all *prisoner* federal lawsuits about prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As Plaintiff K.A. was not a prisoner at the time

the Complaint and Amended Complaint were filed and Plaintiff D.S. was not a prisoner at the time she

joined the action in the filing of the Amended Complaint, the PLRA is not applicable herein. *See Am.*

*Cmpl.* ¶¶55-56; *see also*, *e.g.*, *Perez v Westchester County Dept. of Corr.*, 587 F.3d 143, 155 (2d Cir.

2009) ("[W]e believe that the text of the PLRA, although not entirely unambiguous, is most naturally

read as referring solely to a plaintiff's status at the time of *filing*, not at subsequent stages of the

proceedings.") (emphasis added); *Morris v. Eversley*, 343 F.Supp.2d 234, 239-240 (S.D.N.Y. 2004)

("The PLRA is not applicable to a plaintiff who is no longer a confined prisoner when the suit is filed.")

(*citing Kerr v. Puckett*,138 F.3d 321, 323 (7th Cir.1998) (holding that the term "prisoner" does not

comprehend a felon who has been released)).

      Nevertheless, and as the Defendants are aware, administrative remedies were not even available

to the Plaintiffs, thus rendering the PLRA inapplicable. *See Ross v. Blake*, 136 S. Ct. 1850, 1856, 1859-

60 (2016) (A prisoner's failure to exhaust administrative remedies may be excused if the grievance

procedure is not "available" to him. An administrative remedy is unavailable when "it operates as a

simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved

inmates"; when the procedure is "so opaque that it becomes, practically speaking, incapable of use"; or

"when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation."). As such, the instant matter cannot be dismissed due

to the Plaintiffs' "failure" to comply with a requirement of an inapplicable statute.

      NYCDOC's own directives demonstrate the PLRA's inapplicability herein. In direct contrast to

Defendants' arguments, DOC's Directive 3376 ("Inmate Grievance and Request Program"), which went

into effect on September 10, 2012, and was amended March 19, 2014, only with respect to third-party

grievances received through other DOC units (e.g., Constituent Services, ID, Legal, etc.), expressly

states that "Inmate allegations of physical or sexual assault or harassment by either staff or inmates are

not subject to the [Inmate Grievance and Request Program] process."[3] Additionally, Appendix A of said Directive specifically excludes the Plaintiffs' claims from the grievances process, stating that "[t]he following categories/issues are not subject to the Inmate Grievance and Request Program (IGRP) process"[:]…"Staff-on-inmate sexual assault/abuse allegation (e.g., including repeated verbal statements or comments of a sexual nature, including demeaning references/derogatory comments about gender, body or clothing)"…"Staff-on-inmate non-sexual harassment (e.g., verbal harassment)"…"Medical staff (e.g., complaints regarding quality of care, request for second medical opinion)," and "Request for accommodation due to disability or claims of discrimination based on disability or perceived disability." *Id.*, Appendix A, p. 2.

Accordingly, administrative remedies were not available to the Plaintiffs, and, therefore, the PLRA is inapplicable to their claims.[4] This is further substantiated by the Supreme Court, which has held that in order for an administrative remedy to be "available" under the PLRA, the remedy must afford "the possibility of some relief for the action complained of." *Booth v. Churner*, 532 U.S. 731, 738 (2001). As the Defendant's own directive afforded the Plaintiffs with no such possibility of relief, the Defendants are not entitled to rely upon the PLRA exhaustion requirement.

     b)    The Plaintiffs and putative class members have plausibly alleged
              physical injuries

The Plaintiffs' and class members' coerced refusal and/or delay of medical care has led to significant physical injuries and unnecessary infliction of extreme pain and suffering. The Second Circuit has stated "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition"; however, the Second Circuit has referred to a non-exhaustive list of

---

[3] *See* Hines Aff., p. 1, Ex. A.
[4] The PLRA does not require exhaustion of all administrative remedies but only those that are available to the inmate, stating "no action shall be brought with respect to prison conditions under, [42 U.S.C. §1983], or any other prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

such factors, including "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment', (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (*citing Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Celani v. C-73 Med. Dir.*, 2015 U.S. Dist. LEXIS 91072 (S.D.N.Y. 2015) (*citing Ferguson v. Cai*, No. 11-cv-6181 (PAE), 2012 U.S. Dist. LEXIS 97049, 2012 WL 2865474 (S.D.N.Y. July 12, 2012) (*quoting Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)). As alleged and further discussed *infra*, the Plaintiffs have satisfied this burden. *See, e.g.,* Am. Cmpl. ¶¶53-65. The Amended Complaint pleads objectively serious medical conditions and needs.

Given the foregoing, the Plaintiffs' claims are not barred by the Prison Litigation Reform Act.

D)     <u>THE PLAINTIFFS PLAUSIBLY ALLEGE DEPRIVATIONS OF MEDICAL CARE</u>

The Amended Complaint clearly avers that the Plaintiffs and putative class members have suffered objectively serious injuries herein. For example, as stated in ¶55b of the Amended Complaint, the Plaintiff D.S., out of fear of sexual abuse and to uphold her religious beliefs, was forced to "leave [RMSC] without examination or treatment, causing exacerbation of her shoulder pain and deterioration of her condition." As further stated in ¶55c of the Amended Complaint, the Plaintiff D.S. was again forced to turn down medical care for the same reasons in March 2018, despite experiencing "bleeding, cramping, and other [feminine] concerns" and "request[ing] a chaperone or female healthcare professional for [subsequent] examination." As a result, the Plaintiff D.S. "continued to needlessly endure pain and suffering and deterioration of her condition." *Id.* As to the Plaintiff K.A., the Amended Complaint avers that she was forced to either "wait [at RMSC] for hours for a female healthcare professional and/or chaperone and would then [be] sent back to [her] housing unit without examination

… needlessly endur[ing] pain and suffering and deterioration of her condition." *Id.* at ¶56. And the

Amended Complaint also alleges instances on behalf of the putative class, Am. Cmpl. ¶57(a)-(h) in

which these women were subjected to unnecessary and wanton infliction of pain, numerous instances of

prolonged suffering, and needless exacerbation of pre-existing conditions.

> a)   The Defendants are incorrect in overlooking the unnecessary risks and
> exacerbation of harm that the Plaintiffs and class members faced as a result of the
> Defendants' unconstitutional practices.

The Defendants reliance upon *Hill v. Curione*, 657 F.3d 116 (2d Cir. 2011), and *Chance v.*

*Armstrong*, 143 F.3d 698 (2d Cir. 1998), is curious. Both cases expand upon *Estelle v. Gamble*, *supra*,

the former requiring that, for a plaintiff to prevail on a claim of inadequate medical care, "the alleged

deprivation [of medical care] must be sufficiently serious, in the sense that a condition of urgency, one

that may produce death, degeneration, or extreme pain exists," *Hill* at 122, and the latter holding that a

serious condition exists where "the failure to treat a prisoner's condition *could* result in further

significant injury or the unnecessary and wanton infliction of pain," *Chance* at 702 (emphasis added).

*Hill* concerned the defendant's failure to provide the plaintiff with adequate pain medication; *Chance*, a

claim of inadequate dental care. Both emphasize that a defendant can be found liable of failing to render

a plaintiff adequate medical care where his/her conduct "evinces a conscious disregard of a substantial

risk of serious harm." *Hill* at 123 (citing *Chance* at 703).

*Hill* and *Chance* are satisfied herein. As pleaded in their Amended Complaint, the Plaintiffs K.A.

and D.S. and putative class members requested female healthcare professionals or, alternatively,

chaperones on numerous occasions out of fear of sexual abuse and to uphold her religious beliefs. Am.

Cmpl. ¶¶55b, c, 56. Their requests were repeatedly denied contrary to official policy. *Id.* This denial

resulted in sexual abuse and needless exacerbation of the Plaintiffs' pre-existing medical conditions,

including needless exacerbation of bone and shoulder injury, feminine health concerns, and flu

symptoms. *Id.* Putative class members allege similar instances of abuse in ¶57a-h of the Amended

Complaint. In light of RMSC's noted history of prior sexual abuse, Am. Cmpl. ¶¶49-55, the Defendants were on notice of the need for chaperones, and yet they repeatedly ignored the Plaintiffs' and putative class members' requests for female healthcare professionals or chaperones, causing them to needlessly choose between enduring additional pain and suffering and risking sexual abuse. As such, the Plaintiffs and putative class members have sufficiently alleged that the Defendants' conduct evinced a conscious disregard of their healthcare needs as required by *Hill*, *Chance*, and their progeny.

        b)      Notwithstanding, the Defendants overlook the Plaintiffs and class members' right to qualified medical personnel.

The Defendants are mistaken in overlooking that the Eighth Amendment is also violated in instances in which deliberate indifference results in plaintiffs' denial of access to medical personnel qualified to exercise judgment as to a particular medical concern. In *Hemmings v. Gorczyk*, 134 F.3d 104 (2d Cir. 1998), the Second Circuit held that the defendants' failure to send a prisoner to a qualified specialist when he evinced "classic" symptoms of a ruptured tendon could constitute deliberate indifference to his medical needs in contravention of the Eighth Amendment. In so holding, the Court of Appeals recognized that prisoner-plaintiffs have a right to qualified medical personal when warranted. *See also, Sulton v. Wright*, 265 F. Supp. 2d 292 (S.D.N.Y. 2003). Other Circuits hold similarly. *See, e.g., Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977) (finding Eighth Amendment violated in medical staff's consisting of mostly unlicensed doctors, untrained inmates, and an untrained pharmacist); and *Mata v. Saiz*, 427 F.3d 516, 526 (7th Cir. 2008) (holding nurse's failure to perform "gatekeeper" role could constitute deliberate indifference). Especially in light of RMSC's noted history of instances of prior sexual abuse, Am. Cmpl. ¶¶49-55, then, the Eighth Amendment's requirement that inmates receive access to qualified medical personnel demands/ed herein that the Plaintiffs and class members at least be attended to by chaperones so as to mitigate their risk of sexual abuse and ensure the adequacy of their care. Yet, despite their demands therefor, the Plaintiffs and class members were repeatedly denied any such qualified personnel. Am. Cmpl. ¶¶55b, c, 56, 57a-h. The instant Motion is silent in this regard.

E)  THE PLAINTIFFS AND CLASS MEMBERS STATE A VIABLE CLAIM OF
    DEPRIVATION OF THEIR FREE EXERCISE OF RELIGION, RENDERING
    THE DEFENDANTS' ALLEGATION OTHERWISE MOOT

    a)  This Court cannot probe the rationality of the Plaintiffs' and putative class
        members' religious beliefs.

As an initial matter, the Defendants' challenge to the rationality of the Plaintiffs' and putative

class members' religious beliefs is wholly inappropriate. As *Thomas v. Review Board, Indiana Security

Division*, 450 U.S. 707, 714 (1981), established, "It is not within the judicial ken to question the

centrality of particular beliefs, or practices to a faith, or the validity of particular litigants' interpretations

of those creeds."  In its Memorandum of Law, the Defendants do this directly, writing "Notably, D.S.

does not allege that her religion bars her from being undressed in view of a male health care [*sic.*]

provider in any circumstance. Rather, D.S. *badly* asserts that her religion requires a female chaperone

[only when undergoing intimate examinations]." Defs. Mem. of Law p. 24 (emEdwardsSmithphasis

added). Not only does this incorrectly characterize the Plaintiff's allegation, but, by asserting that the

Plaintiffs' and putative class members' religious beliefs are irrational or badly formulated, the

Defendants have treaded waters forbidden by the Supreme Court, casting judgment upon the rationality

of the Plaintiffs' and putative class members' religious beliefs. For the Court to probe into the Plaintiffs'

and class members' religious beliefs would reach far beyond any permissible challenge to the Plaintiffs'

sincerity therein. *See*, *e.g.*, *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003). Consequently, the

Defendants' challenge to the rationality of the Plaintiffs' and putative class members' religious beliefs is

powerless to establish the non-existence of a viable First Amendment claim herein.

    b)  Notwithstanding, RMSC's failures satisfy the *Turner/O'Lone* Standard,
        rendering the Defendants Liable

The Defendants' conduct fails the *Turner/O'Lone* standard in failing to be reasonably related to a

legitimate correctional purpose. *Turner v. Safley*, 482 U.S. 78 (1987) and *O'Lone v. Estate of Shabazz*,

482 U.S. 342 (1987), stand for the proposition that "when a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner* at 89. In determining whether a prison regulation is reasonably related to a legitimate penological interest, courts are to consider "[Whether there is] a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it." *Turner* at 89-91. Herein, the Amended Complaint avers that the Plaintiffs and putative class members were denied the reasonable accommodation of being provided with a female medical professional or a chaperone as required by their religions. Am. Cmpl. ¶¶55b, c, 56, 57a-h. The Plaintiffs' and putative class members' requests were repeatedly denied despite numerous instances of prior sexual abuse at RMSC of which the Defendants were aware. *Id.* at 49-55, *et seq.* To date, RMSC has come forth with no legitimate correctional interest to warrant the denial of the Plaintiffs' and putative class members' religious accommodations, RMSC instead maintaining a stance of imperviousness thereto. *Id.* at ¶¶57(b), (d), *et seq.*

As such, the Plaintiffs and putative class members state a viable claim of infringement of their rights under the Free Exercise Clause.

F) <u>THE AMENDED COMPLAINT STATES A VIABLE CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT</u>

As an initial matter, even assuming *arguendo* that the Plaintiffs do not have "disabilities" as defined by the ADA, it is plausible to conclude that putative class members consist of disabled women. Denial and delay of treatment thus disproportionately affects the disabled and those with chronic illnesses.

> a) Notwithstanding, the Defendants overlook that their failure to provide the Plaintiffs and putative class members with female medical professionals or chaperones results/ed in impairments to their abilities to adequately carry out major life activities.

The Defendants overlook the broad applicability of the ADA and Rehab Act. The ADA and Rehab Act mandate that reasonable accommodations be made to those who are unable to adequately

carry out major life activities. 42 U.S.C. 12102 (ADA), *et seq.* The ADA defines "major life activities"
as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,
standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,
communicating, and working." ADA §3. The disabled and chronically ill putative class members require
medical care more often, and at times more urgently, than the non-disabled. In failing to provide female
healthcare professionals or chaperones, the defendants' understaffing and lack of enforcement of the
Policy thus disproportionately affects the disabled and chronically ill in contravention of the ADA and
Rehab Act.

 As such, the Amended Complaint plausibly alleges violations of the ADA and Rehab Act.

 G) <u>THE PLAINTIFFS HAVE PLAUSIBLY ALLEGED A *MONELL* CLAIM</u>

The Amended Complaint is replete with instances of a failed official policy, custom, and practice
of the City of New York, New York City Health and Hospitals Corporation, and Physician Affiliate
Group of NY. *Monell v. Dep't of Soc. Servs. of the City of New York*, *supra*, 436 U.S. 658, 691 (1978),
requires that "In order to sustain a claim for relief pursuant to [42 U.S.C.] §1983 against a municipal
defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a
direct causal connection between that policy or custom and the deprivation of a constitutional right."
The Amended Complaint sufficiently pleads plausible allegations of the Defendants' deliberate
indifference to the denial and delay of medical care to the Plaintiffs and putative class members.

 In addition to that discussed *supra*, the Amended Complaint alleges that the Policy is inadequate
on its face in that it fails to require chaperones in all instances of medical care involving opposite sex
patients, arbitrarily limiting its applicability to instances of intimate examinations despite substantial
evidence that those not undergoing same face a similar risk of sexual abuse. *See id.* at ¶68. Moreover,
the Plaintiffs and putative class members also aver that the Defendants' implementation of the Policy
was itself inadequate, with officials blatantly ignoring the Plaintiffs' and putative class members'

requests for female medical personnel or chaperones, medical care, and religious accommodations on numerous occasions. *See id.* at ¶¶55-58, *et seq.* As a result, the Plaintiffs and putative class members have refused medical care to their detriment, suffered sexual abuse at the hands of male staff, and suffer an impingement upon their religious conscience as a result of the Defendants' policies, customs, and practices.

The Defendants' inaction constitutes deliberate indifference. In light of the Amended Complaint's detailed history of sexual abuse at RMSC, *id.* at ¶¶49-55, the Defendants' failure to make necessary changes to the Policy and implementation thereof so as to abate the tide of sexual abuse at RMSC constitutes a course of action deliberately chosen from among various alternatives or, in the alternative, a custom or practice of deliberate indifference to the detrimental conditions created by their inaction. *Id.* at *id.* Moreover, same also evinces inadequate training on part of Defendants as to the Policy's proper implementation and a failure to enforce discipline against staff who fail to comply with the Policy. *Id.* at ¶¶35-47; *see also City of Oklahoma v. Tuttle*, 471 U.S. 823 (1985), and *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

The Plaintiffs and putative class members' detriment is the direct result of Defendants' deliberate indifference to their complaints and suffering. As such and in light of the foregoing, the Plaintiffs thus satisfy *Monell* so as to warrant the imposition of liability against the municipal and quasi-municipal defendants.

H)   THE PLAINTIFFS AND CLASS MEMBERS SATISFY *COLON* SO
     AS TO WARRANT THE IMPOSITION OF LIABILITY AGAINST THE
     DEFENDANTS ANASTASIA BLACKMON and DR "JANE" VESSEL

   a)   The Plaintiffs and class members have plausibly alleged the personal
        involvement of supervisory officials herein.

To recover damages against a supervisory officials for the acts of his/her subordinates, a plaintiff must show that the defendant's personal involvement caused the complained-of constitutional deprivation. *Westbrook v. City Univ. of New York*, 591 F.Supp.2d 207, 224 (E.D.N.Y.2008) (citing

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)). However, personal involvement is not limited to active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *See, Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.
>
> *Colon v. Coughlin*, 58 F.3d 865, 873 (2d. Cir. 1995).

The Plaintiffs and class members have plausibly alleged all *Colon* factors in demonstrating the Defendant Anastasia Blackmon's ignoring their grievances and failing to adequately train RMSC officials as to the proper implementation of the Policy. Am. Cmpl. ¶14, *et seq.* The same is true of the Defendant Dr. Vessel (both Defendants hereinafter referred to as "Supervisory Defendants"). *Id.* at 15, *et seq.* Moreover, the Plaintiffs and class members alleges that the Supervisory Defendants were grossly negligent in training and supervising their subordinates, who deprived them of their constitutional rights. Both are set forth explicitly in the Amended Complaint, stating that the Defendants Blackmon and Vessel repeatedly ignored reports and complaints submitted by the Plaintiffs and class members respectively. *Id.* at ¶¶14, 38, 55b, 57a.

While simple negligence is not enough to establish personal involvement for the purposes of supervisory liability, gross negligence is. *See Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The Second Circuit equates gross negligence with recklessness, defining it as "the 'kind of conduct ... where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to

that risk.'" *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir.1991)).

Where, as here, the Plaintiffs and putative class members have alleged, *inter alia*, that the Supervisory Defendants knew or should have known of the substantial risk that the Plaintiffs and class members' constitutional rights would be violated due to their lack of supervision of their subordinates, that same consciously disregarded such risk, and that such disregard resulted in constitutional violations committed thereby, they have sufficiently pleaded the personal involvement of the Supervisory Defendants. Am. Cmpl. ¶¶14, 15, 38, 55b, 56, 57a, d, f, and g. For the Supervisory Defendants were aware that the Plaintiffs and putative class members were housed at their facilities and thus knew or should have known of the sexual abuse that occurred and occurs there to date. *Id.* ¶¶35-47. Yet, the Supervisory Defendants failed to, *inter alia*, implement obvious measures to reduce the risk of rape and sexual abuse consistent with the Prison Rape Elimination Act, failed to monitor (through cameras or otherwise) known at-risk areas, failed to implement meaningful consequences for officers and RMSC staff who fail to report suspected and/or witnessed rape and sexual abuse, failed to implement adequate and effective training, supervision and monitoring policies, failed to implement random interviews and/or exit interviews with at-risk inmates, failed to install surveillance cameras in unmonitored areas, failed to faithfully investigate reported abuses and punish the offending officers, and failed to implement security policies that do not force at-risk prisoners to choose between being safe and being in protective custody. *Id., et seq.*

There is also evidence in the Amended Complaint that the Supervisory Defendants were informed by public and private investigations, reports, studies, and testimony that RMSC in particular, lacked appropriate guidelines and procedures to provide chaperones for female prisoners undergoing medical exams. *See id.* The Amended Complaint alleges that, despite same, the Supervisory Defendants took no appropriate action. Therefore, there are sufficiently pleaded allegations in the Amended

Complaint for this Court to find it plausible that the Supervisory Defendants were deliberately indifferent and grossly negligent in supervising their subordinates and that same resulted in the Plaintiffs and putative class members' being repeatedly subjected to impingement of their religious conscience, inadequate medical care, and sexual abuse.

In showing the Supervisory Defendants' gross negligence, the Plaintiffs and class members have satisfied *Colon* herein.

I)      PLAINTIFFS SATISFY RULE 23 FOR CLASS CERTIFICATION

As stated in the Amended Complaint, the Plaintiffs and class members satisfy Fed. R. Civ. P. 23's requirements of an ascertainable class, numerosity, commonality and typicality, adequacy, and superiority so as to warrant denial of the instant motion. *Id.* at ¶66. The Defendants' Motion only challenges the numerosity and commonality-and-typicality elements of Rule 23.

a)      Numerosity

The Amended Complaint satisfies the numerosity requirement of Rule 23, as "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Amended Complaint plausibly alleges that "[t]he precise number of class members and their identities are unknown to Plaintiffs at this time but are believed to be in excess of 10,000 members." *Id.* at ¶66b. This is not speculative. The footnote thereat explains that

> In the New York City Criminal Justice report of February 2018, Defendant City acknowledges that the average daily jail population in January 2014 was 11,089 and 9,060 in February 2018 (of which 6% are women). This would equate to an average daily female population ranging from 665 in 2014 to 543 in 2018, assuming no increases during that span. Given prisoner turnover (the average length of stay for all inmates is 68 days), it is reasonable to assume that thousands of women were confined to RMSC during the relevant time period. Am. Cmpl. at fn. 7.

b)      Commonality and Typicality

The Plaintiffs and putative class members allege specific claims and injuries to themselves that are common and typical to the purported class. *Id.* at ¶¶55-57, 66. Additionally, the injunctive relief and

declaratory judgment sought by this action affect the entire class. Representative examples of the claims and injuries of the putative class demonstrate that the putative-class claims and injuries are common and typical thereto. *Id.* at ¶¶57a-h.

Rule 23's typicality requirement "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Although the nature of the putative class members' injuries may differ from the Plaintiffs K.A. and D.S., it is not a basis for dismissal of the instant action, as "[t]he representative claims need not be identical to the claims of every class member in order to meet the typicality requirement." *McNeill v. N.Y.C. Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989).

Regarding the commonality requirement, the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), that "[w]hat matters to class certification … is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 2551 (omission in original) (internal quotation marks and citation omitted). In other words, the class claims "must depend upon a common contention…of such a nature that it is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the class claims in one stroke." *Id.* Here, the Amended Complaint asserts such "common contentions." *See id.* at Prelim. Stmt. and ¶¶68-82.

Whether the Defendants' policy, pattern, and practice of failing to provide female healthcare professionals and chaperones for intimate examinations is (a) unconstitutional, (b) subjects females prisoners to a substantial and unreasonable risk of sexual abuse and assault by male healthcare professionals, (c) subjects female prisoners to a substantial and unreasonable risk of harm due to delayed and/or denied access to timely medical care, and (d) whether the Defendants' policy, pattern, and practice places undue hardship on female prisoner's exercise of their sincerely held religious beliefs are all common questions subject to class-wide resolution. *See id.* at ¶66c; *see also Wal-Mart*, 131 S. Ct. at 2556 ("[F]or the purposes of Rule 23(a)(2) [e]ven a single [common] question will do.") (internal quotation marks and citation omitted)). However, should the Court determine the class defined in the Amended Complaint to be too broad, Rule 23(c)(5) provides for the creation of "subclasses that are each treated as a class," not dismissal of the action.

For the foregoing reasons, the Defendants' assertion that the numerosity and commonality-and-typicality elements of Rule 23 are not satisfied herein are flawed.

## CONCLUSION

Upon the facts and law herein, the Plaintiffs respectfully request that this Court deny the Defendants' instant Motion to Dismiss in its entirety together with such other and further relief as this Court deems just, proper, and necessary.

Dated:  Brooklyn, New York
        November 16, 2018

Respectfully submitted,

HELD & HINES, L.L.P.
*Attorneys for the Plaintiffs*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

By: _____/s/_____
        Philip M. Hines (PH5954)