USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _8-26-19_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.A. AND D.S., INDIVIDUALLY AND ON
BEHALF OF A CLASS OF
ALL OTHERS SIMILARLY SITUATED,

                              Plaintiffs,

          -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

18-cv-3858 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs K.A. and D.S. bring this putative class action on their own behalf and on behalf of all others similarly situated against the City of New York ("City"), New York City Health and Hospitals Corporation ("NYCHHC"), Physician Affiliate Group Of New York, P.C. ("PAGNY"), Anastasia Blackmon, and Dr. "Jane" Vessel (collectively "Defendants"). Plaintiffs allege claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act arising out of Defendants' medical care policies, customs, and practices at the Rose M. Singer Center ("RMSC") at Riker's Island, New York. Specifically, Plaintiffs allege that Defendants violated their First, Fourth, Eighth and Fourteenth Amendment rights—to be free from cruel and unusual punishment; to be free from the unnecessary and wanton infliction of pain and emotional and physical injury; to be free from violations of their bodily integrity and privacy; to competent and timely medical care; and to the freedom of their religion by failing to provide female doctors or chaperones for their medical examinations. Am. Comp. ¶ 77. Defendants have moved to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

1

## BACKGROUND

I.      **Factual Background**[1]

**A. Parties**

**1.  Plaintiffs**

Plaintiffs and putative class members are women confined, past and present, to the New York City Department of Corrections ("NYCDOC") at the RMSC; the women-only jail on Rikers Island. Plaintiffs claim that for nearly a decade, female prisoners at RMSC have been deprived of adequate medical care and the free exercise of religion. Am. Comp. ¶ 14.[2]

**2.  Institutional Defendants**

Defendant City of New York operates the New York City Department of Health and Mental Hygiene ("DOHMH") and the NYDOC. Am. Comp. ¶¶ 7-8. PAGNY is a domestic professional corporation. *Id*. at ¶10. NYCHHC and PAGNY, their site medical directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff (collectively, "healthcare professionals"), provided medical, mental health, dental and ancillary services to prisoners at Rikers Island pursuant to a contract with the City of New York and/or DOHMH. *Id*. at ¶ 11. In carrying out their duties, NYCHHC and PAGNY are required to ensure their policies, practices, procedures, and professional personnel comply with all City, NYCDOC and DOHMH policies, the City's Minimum Standards for Health Care, and local, state and federal law. *Id*. The City, NYCHHC and PAGNY were responsible for supervising and overseeing the hiring and

---

[1] The following facts are taken from Plaintiffs' Amended Complaint ("Am. Comp.") and are presumed true for purposes of this motion. *See* ECF No. 32
[2] It is against Plaintiffs' religious beliefs to be physically examined by a man who is not their husband (including healthcare professionals) alone.  Am. Comp. ¶ 30.

supervision of RMSC's healthcare professionals. *Id.* at ¶13. Most healthcare professionals assigned to RMSC are male.

### 3. Individual Defendants

Defendant Anastasia Blackmon ("Warden Blackmon") was the warden of RMSC. Warden Blackmon was responsible for the following: 1) making policy, methods and procedures, and standards for care and treatment for the RMSC prisoners; 2) supervising staff and inmates, and enforcing NYCDOC, DOHMH and NYCHHC rules and regulations; 3) investigating staff sexual misconduct complaints; 4) investigating and responding to complaints of misconduct against staff, in conjunction with NYCDOC's Inspector General's Office and prosecutors; 5) training staff; 6) reviewing decisions to place male healthcare professionals in a female-only jail; and 7) deciding staff assignments, including whether to remove staff from contact with female prisoners. *Id.* at ¶ 14.

Defendant Dr. "Jane" Vessel ("Dr. Vessel") was the chief medical officer of RMSC. Am. Comp. ¶ 15. As the Chief Medical Officer, Dr. Vessel was responsible for the following: 1) planning, reviewing, supervising, and controlling the medical and health services rendered at RMSC; 2) formulating policies, methods and procedures, and standards for care and treatment; 3) supervising methods of delivery and evaluating patient care; 4) organizing and coordinating the services provided by healthcare professionals at RMSC; 5) overseeing the surveillance and promotion of the healthcare professionals employed at RMSC; participating in administrative decision-making; 6) recommending, approving, and implementing policies and procedures; 7) communicating issues and concerns to RMSC, NYCDOC, NYCHHC, and PAGNY leadership when warranted; 8) establishing and implementing policies, procedures, and guidelines designed

to assure a safe clinic experience at RMSC and the provision of adequate, comprehensive services thereat; 9) supervising, evaluating, and training subordinates assure a safe clinic experience at RMSC and the provision of adequate, comprehensive services thereat; and 10) providing direct oversight of staffing decisions including staff management practices to ensure adequate staffing at the RMSC clinic and availability of female chaperones during all shifts. *Id.*[3]

### B. Allegations

Plaintiffs claim Defendants failed to enact adequate rules and polices to protect the health, security, religious, disability, and privacy rights of female prisoners and to enforce those rules and policies that exist, resulting in violations of these same rights. Am. Comp. ¶ 14. For example, Plaintiffs claim male healthcare professionals perform unchaperoned intimate examinations on female prisoners against official policy and are not disciplined or reprimanded for such misconduct.[4] In doing so, Defendants regularly force Plaintiffs to either partake in an unchaperoned intimate examination or go back to their cell unexamined; foregoing their medical

---

[3] The DOHMH/NYCHHC #MED 2C "Policy" subsection provides:
"To safeguard patients from potential abuse and to safeguard providers from false allegations of abuse, any healthcare professional undertaking an intimate examination (defined as any examination, investigation or treatment that involves the rectum, genitalia or breasts) will do so with the presence of a chaperone." The "Procedures" subsection provides: 1) "The clinician responsible for the clinical encounter is responsible for securing a chaperone. A chaperone is a member of the clinic staff who is present for a clinical encounter that involves an intimate examination. When possible, the chaperone should be the same gender as the patient; however, the lack of a same gender chaperone should not preclude the use of a chaperone"; 2) "The chaperone may be part of the clinical encounter. Chaperones may assist with the clinical encounter if appropriate to their level of training and job title"; 3) "In the case of a medical emergency, if no chaperone is available to conduct the examination, the provider may proceed absent a chaperone provided that the clinician fully documents the circumstances in the medical record"; 4. "The name of the chaperone attending a clinical encounter must be entered as part of the medical documentation of the encounter by the M.D. or P.A. or nurse who is responsible for documenting the encounter."
[4] Plaintiffs also contend Defendants failed to enact adequate rules and policies to protect female prisoners from sexual innuendoes, vulgarity, degrading sexual comments, and propositioning, and to enforce those rules and policies that exist. For example, Plaintiffs claim, that because Defendants do not discipline its staff for violating its policies, Plaintiffs are subject to a hostile and sexualized atmosphere in which sexual harassment and abuse is more likely to occur. *Id.* at ¶ 34.

needs for weeks. *Id.* at ¶ 35, 37. Essentially, Plaintiffs claim Defendants make them choose between their religion, safety and their health.

Plaintiffs claim that Defendants should know that, generally, allowing and assigning male healthcare professionals to perform unchaperoned intimate examinations on female prisoners places them at substantial risk of being sexually victimized; that sexual misconduct by staff is ongoing and recurrent; and that Defendants' policies and practices are "grossly inadequate" to prevent sexual misconduct. Am. Comp. ¶ 25.

Plaintiffs also claim that Defendants should know of the inherent dangers of providing male health care examinations based on the RMSC's history. Am. Comp. ¶ 27. Over the years, many women have complained of being sexual abused by male healthcare professionals at RMSC. *Id.* As a result, many male healthcare professionals at RMSC have been the subject of internal investigations for engaging in sexual misconduct with female prisoners, numerous instances of sexual misconduct have been substantiated, and numerous substantiated matters have been referred to the district attorney's office for prosecution. *Id.*

Furthermore, not only did Defendants' disregard its history, they also disregarded Plaintiffs' history of suffering sexual abuse, occurring both in and out of custody. Am. Comp. ¶ 40. Plaintiffs also alleged other forms of staff criminal misconduct; including bribery, beatings, passing contraband, threats, and other forms of coercion. *Id.* at ¶ 43. Plaintiffs claim Defendants' practices have caused their psychological and emotional distress, including depression, anxiety, nightmares, difficulty sleeping, and fearfulness of male officers and healthcare professionals. *Id.* Defendants' practices have also caused Plaintiffs to endure pain, suffering, physical injuries, and exacerbated deteriorating medical conditions. *Id.* at ¶ 41.

5

Plaintiffs K.A. and D.S., as well as dozens of other female prisoners, filed formal complaints and grievances with Defendants seeking relief from the alleged inappropriate practices. K.A., D.S. and the putative class members also complained to NYCDOC staff. Am. Comp. ¶ 38. However, these complaints and grievances were ignored, and the alleged inappropriate practices continued unabated. *Id.*

In sum, Plaintiffs claim that despite the obvious nature of these risks and despite the recurrent incidence of sexual abuse and harassment by male healthcare professionals against female prisoners, Defendants have failed to take reasonable, necessary and appropriate steps to prevent and remedy such misconduct.

The Amended Complaint detailed the named Plaintiffs' following experiences:

## 1. Plaintiff D.S.

Plaintiff D.S. was an RMSC inmate from January 22, 2018 through April 18, 2018. Prior to January 22, 2018, D.S. was the victim of sexual abuse, molestation, and rape. Defendants were on notice of her prior history of sexual abuse based upon information she provided during the intake phase. Am. Comp. ¶ 55.

On January 31, 2018, D.S. was attacked by another inmate and re-injured her right shoulder. Thereafter, D.S. was presented to the RMSC clinic approximately ten to fifteen times for examination and treatment for pain in her shoulder and other evaluations. Am. Comp. ¶ 55. On these occasions, D.S. was assigned to physician assistant, Mr. Roche, and a male doctor, Dr. Jumo. D.S. requested a chaperone and/or examination by a female healthcare professional each time since the examination required her to remove her clothing but was never provided with one.

6

D.S. also alleges that the male healthcare professionals told her they needed to examine her breasts; though there was no medical basis for this. *Id*. Rather, she claims, it was an excuse for them to fondle her breasts on at least three occasions. D.S. claims she felt compelled to comply with Mr. Roche and Dr. Jumo's requests to examine her breasts since she suffered a lot of pain and desperately needed a referral for an orthopedic consult and physical therapy. *Id*.

On several occasions, most notably March 2, 2018, Mr. Roche and/or Dr. Jumo told D.S. that only male healthcare professionals were available and that if she insisted on a chaperone or female healthcare professional she would not be seen that day. Am. Comp. ¶ 55.b. Mr. Roche and/or Dr. Jumo also told D.S. that he had to examine her before he decided whether a chaperone would be necessary. *Id*. As the prior victim of sexual abuse, molestation, and rape, D.S. felt extremely uncomfortable disrobing in front of Mr. Roche and Dr. Jumo without a chaperone. *Id*. Not only did her past experiences cause her discomfort; it was against her Muslim faith to be exposed in front of a man without a woman present. *Id*. Accordingly, D.S. felt compelled for her own safety and religious observance to leave the clinic without examination or treatment, causing her shoulder pain to exacerbate and her condition to deteriorate. *Id*. D.S. filed a grievance with NYCDOC, deposited a letter in Warden Blackmon's mailbox, and deposited a letter to Dr. Vessel in the clinic's "Second Chance Box." Defendants did not respond to the grievance or letters prior to her transfer on April 18, 2018.

In late March 2018, D.S. requested a gynecological examination due to bleeding, cramping and other concerns and requested a chaperone or woman healthcare professional for the examination. D.S. also requested the same from the FastTrack nurse at the RMSC clinic. Am. Comp. ¶ 55.c. When D.S. was taken to the clinic in April for an examination, no chaperone or female healthcare professional was present. D.S. was told that no chaperones or woman

7

healthcare professionals were staffed and that she had to proceed with a male healthcare professional or go unexamined. *Id.* D.S. declined to proceed with a male healthcare professional for the reasons aforesaid and the male healthcare professionals generated a Refusal of Medical Care form. *Id.* D.S. was returned to her housing unit and Defendants never rescheduled the appointment. As a result, D.S. continued to endure pain and suffering, and her condition deteriorated. *Id.*

### 2. Plaintiff K.A.

RMSC released K.A. from custody in April 2018. Prior to September 20, 2017, K.A. was sexually victimized by a male healthcare professional in the RMSC clinic. Am. Comp. ¶ 56. The incident was investigated and substantiated by NYCDOC. *Id.* On several occasions while incarcerated, K.A. presented to the RMSC clinic for sick call. Defendants routinely assigned K.A. to a male healthcare professional for examination. Knowing that she would be asked to remove her shirt during the examinations, K.A. asked to be examined by a woman healthcare professional and was told none were available. *Id.* K.A. explained that she was sexually abused by a male RMSC clinic staff and requested a chaperone. K.A. was told that no chaperones were available either. K.A. would wait in the clinic for hours for a woman healthcare professional and/or chaperone and would then be sent back to the housing unit without examination. As a result, K.A. continued to endure pain and suffering and her condition deteriorated. Around February 29, 2018, K.A. presented to the RMSC clinic due to the flu. K.A. requested examination by a woman healthcare professional or a chaperoned examination if with a man. Mr. Roche told K.A. and other clinic personnel that she was a "troublemaker." After K.A. stated that she would submit a complaint against the entire RMSC clinic staff, Defendants located a woman doctor to perform the examination.

8

## II.      Procedural Background

Plaintiffs filed their original Complaint on April 30, 2018 and the Amended Complaint on May 2, 2018. ECF Nos. 1, 14. In the Amended Complaint, Plaintiffs allege causes of action under 42 U.S.C. §1983, Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* Specifically, Plaintiffs contend that Defendants' failure to provide female healthcare professionals or chaperones to the Plaintiffs and putative class members violated their freedom to freely exercise their religion, exposed them to sexual abuse, and constituted discrimination. *Id.*

On October 19, 2018, Defendants moved to dismiss the Amended Complaint. ECF Nos. 37. Plaintiffs filed their response on November 16, 2018. ECF No. 43. Defendants failed to reply to Plaintiffs' opposition. Accordingly, the Court considers the motion fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I.      Section 1983

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). A complaint under § 1983 "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (citations omitted).

Plaintiffs allege that Defendants violated their constitutional rights to be free from cruel and unusual punishment; to be free from the infliction of pain and emotional and physical injury; to be free from violations of their bodily integrity and privacy; to competent and timely medical care; and to the freedom of their religion by failing to provide female doctors or chaperones for their medical examinations. Am. Comp. ¶ 77. Defendants assert that: 1) Plaintiff K.A.'s claims are barred by the statute of limitations, and 2) Plaintiff D.S. fails to state a claim.

## A. Statute of Limitations

As a threshold matter, Plaintiff K.A.'s claims are not time barred. Since § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)); N.Y. C.P.L.R. § 214. The accrual date for a § 1983 action, however, is "a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). Instead, it is governed by "federal rules conforming in general to common-law tort principles." *Id.* (citations omitted). Under those principles, "the standard rule is that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (citations omitted).

Here, Defendants argue K.A. lacks standing because she "cannot obtain relief which redresses any injury occurring within the three-year limitation period." *See* Def.'s Mem. 9. This case opened on May 2, 2018. *See* ECF Nos. 9-15. Defendants argue that the latest date a § 1983 claim accrued for K.A. is Feb. 4, 2015; the date of K.A.'s latest sexual assault allegation. *See* Def.'s Mem. 13. However, this argument misconstrues Plaintiff K.A.'s claims. Indeed, the

Amended Complaint alleges that Defendants routinely denied Plaintiff K.A.'s requests to be examined by a woman health care professional. *See* Am. Comp. ¶ 56. Thus, Plaintiff K.A.'s, as well as Plaintiff D.A. and the purported class members, claims are not based solely on the alleged incidents of sexual assault themselves. Instead, the Amended Complaint alleges Plaintiff K.A, as both a Muslim woman and a victim of sexual assault at the hands of men, was injured because Defendants disregarded her sexual assault history by not providing her with a woman health care professional at her request. Defendants' disregards allegedly violated her First and Eighth Amendment rights during her incarceration from September 20, 2017, to April 2018. Therefore, Plaintiff K.A.'s § 1983 claims are within the three-year statute of limitations.

## B. Plaintiffs' First Amendment Claims

Defendants' also argue that Plaintiffs' First Amendment claims fail. Prison regulations allegedly impairing a prisoner's free exercise of religion are assessed "'under a reasonableness test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'" *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987)); *see also Brandon v. Kinter*, No. 17-911-cv, 2019 U.S. App. LEXIS 27211, at *20 (2d Cir. Sep. 10, 2019). "[A] prisoner mounting a free-exercise challenge 'must show at the threshold that the disputed conduct substantially burdens [their] sincerely held religious beliefs.'" *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010) (summary order) (quoting *Salahuddin*, 467 F.3d at 274-75). "'The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.' Once defendants carry this burden of production, 'the burden remains with the prisoner to show that these articulated concerns were irrational.'" *Id.* (internal citations omitted).

Here, Plaintiffs claim their Muslim faith required a woman health professional to be present during nude health care examinations (Am. Cmpl. ¶¶ 55b, c, 56, 57a-h), and Defendants' failure to provide such accommodations forced them to choose between sin and health. Thus, Plaintiffs' allegations suggest Defendants "substantially burdened their sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75. Defendants then had the burden of linking "legitimate penological interests" to denying Plaintiffs' requests. Instead, Defendants make several arguments attacking whether the Plaintiffs beliefs were sincerely held and substantially burdened—all of which fail.

First, Defendants declare that they simply could not locate case law requiring prison officials to accommodate women inmates with women medical professionals on religious grounds. Defendants then cite multiple strip search and security/observation prison contexts and declare they are "analogous and persuasive and establish that plaintiffs here have not pleaded a First Amendment violation."[5] However, considering each cited case deals with neither women or medical examinations, these cases are neither analogous or persuasive.

Second, Defendants allege that Plaintiffs' First Amendment rights were not violated because Plaintiff "*baldly* asserts that her religion requires a female chaperone" during medical examinations. *See* Def.'s Mem. 16. However, Defendants mistakenly believe the Court can deem Plaintiffs' religious beliefs "bald". As *Thomas v. Review Board, Indiana Security Division*

---

[5] Defendants cite *Lindh v. Warden, Fed. Corr. Inst.*, 2016 U.S. Dist. LEXIS 116243, 14-cv-00142-JMS-DKL, (S.D.Ind. August 30, 2016) (where Muslim inmate's religion mandates "a male person is prohibited from exposing the area of his body between the navel and the knees. This area is called the awrah,…Exceptions to this prohibition exist for showing the awrah to one's spouse, for medical treatment, or for other circumstances of necessity") (emphasis added); *Bradford v. Kramer*, 2017 U.S. Dist. LEXIS 45706, 15-cv-1405-JPG-SCW (S.D.Ill., January 27, 2017) ("Plaintiff cannot recover money damages under RLUIPA" where religious beliefs of Sunni Muslim strictly prohibit anyone other than a man's wife from seeing him nude); *Jean-Laurent v. Lawrence*, 2013 U.S. Dist. LEXIS 38004 *30, 12 Civ.1502 (JPO) (SN) (S.D.N.Y., March 19, 2013) ("As Judge Strom recently explained in a case involving the searching of a Muslim prisoner in his underwear, "no case law from the United States Supreme Court or the Second Circuit Court of Appeals supports" the theory that it violates a Muslim inmate's constitutional rights to be searched in his underwear in the presence of a female officer").

established, "[i]t is not within the judicial ken to question the centrality of particular beliefs, or practices to a faith, or the validity of particular litigants' interpretations of those creeds." 450 U.S. 707, 714 (1981). Not only do Defendants' arguments incorrectly characterize Plaintiffs' allegations, but by asserting that Plaintiffs' religious beliefs are irrational or badly formulated, Defendants tread waters forbidden by the Supreme Court and cast judgment upon the rationality of Plaintiffs' religious beliefs. *See, e.g., Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003). Consequently, Defendants' challenge to the rationality of Plaintiffs' religious beliefs does not help carry its burden.

Defendant is correct in pointing out that the Court cannot force a prison system to accommodate an inmate's gender preferences for health care providers on religious grounds. However, the Court is constitutionally required to determine if a prison system justified its decision not to. To date, Defendants present no legitimate correctional interest to warrant denying Plaintiffs' religious accommodations. *See* Am. Comp. ¶¶ 57(b), (d), et seq. Therefore, Defendants failed to carry its burden.

Accordingly, Plaintiffs state a viable Free Exercise claim.

### C. Plaintiffs' Eighth Amendment Claims

Plaintiffs allege that Defendants' deliberate indifference deprived them of adequate medical treatment—violating their Eighth Amendment rights. Defendants argue that Plaintiffs fail to show that they suffered from any serious medical condition which were known to the named defendants yet ignored. The Court disagrees.

### 1. Deliberate Indifference Doctrine

To establish a claim for inadequate medical care under § 1983, a plaintiff must show that a defendant was deliberately indifferent to her serious medical needs. *See Estelle v. Gamble*, 429

14

U.S. 97, 104-05 (1997). To do so, the plaintiff must satisfy a two-prong test: 1) show the alleged

deprivation was objectively "sufficiently serious," (*see Wilson v. Seiter,* 501 U.S. 294, 298, 111

S. Ct. 2321, 2324 (1991); *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990)); and 2) the charged

official must act with a sufficiently culpable state of mind. *Id.*

To satisfy the objective prong, "the alleged deprivation must be sufficiently serious, in the

sense that a condition of urgency, one that may produce death, degeneration, or extreme pain

exists." *Hill v. Curione,* 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin,* 99

F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).[6] To satisfy the subjective prong,

the defendants must "know, or should have known, that the condition posed an excessive risk to

health or safety." *Darnell v. Pineiro,* 849 F.3d 17, 35 (2d Cir. 2017).

### 2. Application

Here, Plaintiffs satisfy each prong of the deliberative indifference doctrine. Plaintiff D.S.

alleges that, out of fear of sexual abuse and to uphold her religious beliefs, she was forced to

"leave [RMSC] without examination or treatment, causing exacerbation of her shoulder pain and

deterioration of her condition." *See* Am. Comp. ¶ 55. As stated in the Amended Complaint,

Defendants forced D.S. to turn down medical care for the same reasons in March 2018, despite

experiencing "bleeding, cramping, and other [feminine] concerns" and "request[ing] a chaperone

or female healthcare professional for [subsequent] examination." As a result, D.S. "continued to

needlessly endure pain and suffering and deterioration of her condition." *Id.* Similarly, Plaintiff

K.A. alleges she was forced to either "wait [at RMSC] for hours for a female healthcare

professional and/or chaperone and would then [be] sent back to [her] housing unit without

---

[6] *See also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2010) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Thus, Plaintiffs sufficiently allege a serious deprivation of health care that Defendants' should have been aware of.

examination … needlessly endur[ing] pain and suffering and deterioration of her condition." *Id.*
at ¶56. Thus, Plaintiffs satisfy the subjective and objective doctrines of the deliberate
indifference doctrine.

Defendants cite to *Hill v. Curione*, 657 F.3d 116 (2d Cir. 2011), and *Chance v. Armstrong*,
143 F.3d 698 (2d Cir. 1998) for support, but Plaintiffs satisfy the requirements in each case.[7]
*Chance* holds that a serious condition exists where "the failure to treat a prisoner's condition
*could* result in further significant injury or the unnecessary and wanton infliction of pain". *Id.*
(emphasis added). *Hill* concerned the defendant's failure to provide the plaintiff with adequate
pain medication; *Chance*, a claim of inadequate dental care. Both cases emphasize that a
defendant can be found liable of failing to render a plaintiff adequate medical care where their
conduct "evinces a conscious disregard of a substantial risk of serious harm." *Hill* at 123 (citing
*Chance* at 703).

Here, Plaintiffs requested female healthcare professionals or chaperones on numerous
occasions based on their religion and fear of sexual abuse. Am. Compl. ¶¶ 55b, c, 56. Their
requests were repeatedly denied. *Id*. This denial allegedly resulted in sexual abuse and
exacerbated Plaintiffs' pre-existing medical conditions, including bone and shoulder injuries,
feminine health concerns, and flu symptoms. *Id*. Furthermore, Plaintiffs allege, in light of
RMSC's history of sexual abuse and Plaintiffs responses in the intake process, Defendants were
on notice of Plaintiffs' need for women health care professionals to receive adequate medical
care. Instead, Defendants allegedly ignored Plaintiffs requests, causing them to choose between
enduring additional pain and suffering and risking sexual abuse. Therefore, Plaintiffs sufficiently

---

[7] Both cases require that, for a plaintiff to prevail on a claim of inadequate medical care, "the alleged deprivation [of
medical care] must be sufficiently serious, in the sense that a condition of urgency, one that may produce death,
degeneration, or extreme pain exists," *Hill* at 122; *Chance* at 702.

alleged that the Defendants' conduct evinced a conscious disregard of their healthcare needs as required by *Hill* and *Chance*.

## II.     Defendants' Remaining Challenges to Plaintiffs' § 1983 Claims

Defendants also argue Plaintiffs' § 1983 claims fail because Plaintiffs fail to show: 1) they satisfied the Prison Litigation Reform Act of 1996 ("PLRA") exhaustion requirements; 2) Defendants' are liable under *Monell v. N.Y. City Dep't of Soc. Servs*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1976); and 3) the individually named defendants were personally involved with the alleged constitutional violations. The Court will address each argument in turn.

### A. Defendants Fail to Adequately Assert Exhaustion Defense

The PLRA requires a prisoner to exhaust all available administrative remedies before bringing a § 1983 action. 42 U.S.C. § 1997e(a). State grievance procedures determine the "boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). However, a prisoner's fulfillment of her duty to exhaust her available administrative remedies under the PLRA is not a fact that the prisoner must plead to state a § 1983 claim, but rather a fact a defendant may challenge through an affirmative defense. *Id.* at 210 ("inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir.1999); *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available."); *Rose v. Masiey*, 2008 U.S. Dist. LEXIS 20174 (S.D.N.Y. 2008) (Lynch, J.) (citing *Abney v. McGinnis*, 380 F.3d 663 (2d. Cir. 2004)) ("it is the defendants burden to both plead this affirmative defense and to prove its applicability.")

17

Here, Defendants fail to establish the affirmative exhaustion of remedies defense. As movants, Defendants are required to establish that Plaintiffs and putative class members did not grieve and/or exhaust their administrative remedies. *See Johnson v. Testman*, 380 F. 3d 691 (2d Cir. 2004); *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Defendants do not submit any support for its position, thus rendering further inquiry improper. Accordingly, Plaintiffs' § 1983 claims survive Defendants' exhaustion challenges at this stage of litigation.

**B. Institutional Defendants: Plaintiffs Satisfy *Monell***

A municipality may not be held liable under § 1983 on a *respondeat superior* theory of liability. *Monell*, 436 U.S. at 691; *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). Rather, a municipality may only be found liable under § 1983 "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).[8]

A policy or custom need not be explicit to establish municipal liability in a § 1983 claim. *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Rather, a

---

[8] Similarly, private employers acting under the color of state law "are not liable under §1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (internal citations and quotation omitted); *see also Filarsky v. Delia*, 566 U.S. 377, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012) ("Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983.") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982)); *Briel v. Sposato*, No. 12-CV-2868, 2012 U.S. Dist. LEXIS 123070, 2012 WL 3697806, at *5 (E.D.N.Y. Aug. 21, 2012) ("A private employer may be held liable under Section 1983 for the acts of its employees where the employee acted pursuant to the employer's official policy, or where the private entity employer was jointly engaged with state officials or its conduct is chargeable to the state, or where the employer authorized or participated in the alleged constitutional deprivation.")

custom or policy may be inferred by constitutional violations so "persistent and widespread"
they "practically have force of law." *Davis v. City of New York*, 959 F. Supp. 2d 324, 338
(S.D.N.Y. 2013). Moreover, a plaintiff adequately alleges a policy or custom by alleging the
existence of "a formal policy officially endorsed by the municipality [or] actions taken by
government officials responsible for establishing the municipal policies that caused the particular
deprivation in question". *Cowan v. Town of Mt. Vernon*, 95 F. Supp. 3d 624, 637 (S.D.N.Y.
2015) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

 Here, Plaintiffs allege that the City, NYHHC, and PAGNY are liable under § 1983 for the
alleged official policy of denying inmates requests to be seen by women medical professionals,
notwithstanding religious beliefs or past sexual abuse. *See* Am. Comp. ¶¶ 68-71. As discussed,
Plaintiffs' allegations support a plausible inference that their constitutional rights were violated
by Defendants' policies. Thus, Plaintiffs' allegations sufficiently state a § 1983 claim against the
institutional defendants. *See Monell*, 436 U.S. at 694 (holding that municipal liability may be
established where the injury complained of resulted from the "execution of a government's
policy or custom, . . . [which] may be fairly said to represent official policy"); *Guichard v. Town
of Brookhaven*, 26 F. Supp. 3d 219, 224 (E.D.N.Y. 2014). Accordingly, Plaintiffs' § 1983 claims
against the institutional defendants survive the motion to dismiss.

 **C.  Individual Defendants: Plaintiffs Satisfy *Colon***

 To establish individual liability under § 1983, a plaintiff must show that "each
Government-official defendant, through the official's own individual actions, has violated the
Constitution." *Iqbal*, 556 U.S. at 678. "[M]ere 'linkage in the prison chain of command' is
insufficient to implicate a state commissioner of corrections or a prison superintendent in a §
1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*,

780 F.2d 205, 210 (2d Cir. 1985)); *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No.

15-CV-7065 (RA), 2019 U.S. Dist. LEXIS 137487, at *69 (S.D.N.Y. Aug. 14, 2019). A plaintiff

may establish a supervisory defendant's "personal involvement" in a constitutional violation in

five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to
> the rights of inmates by failing to act on information indicating that unconstitutional
> acts were occurring.

*Colon v. Coughlin* 58 F.3d 865, 873 (2d Cir. 1995). Once a plaintiff properly alleges that a

defendant was personally involved in a constitutional deprivation, she "must also establish that

the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation."

*Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

Here, Plaintiffs do not allege either of the supervisory defendants directly denied their

requests to be treated by women medical professionals. Instead, Plaintiffs argue that the

supervisory defendants should be held liable because they "ignored grievances" and refused to

remedy constitutional violations at RMSC. Am. Comp. ¶¶ 14-15. Thus, the third, fourth and fifth

*Colon* categories are possible bases of liability for Plaintiffs' allegations. Under these categories,

"allegations as to defendants' knowledge of alleged constitutional violations" are only sufficient

if "accompanied by allegations that the defendants had direct *responsibility* for monitoring the []

violation or that there had been a history of previous episodes putting the defendants on notice of

the problem." *Harrel*, 2019 U.S. Dist. LEXIS 137487, at *69 (citing *Parris v. New York State

Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013)) (emphasis added). Such "notice"

may consist of an internal report alerting the defendants of the problem, *see Cash v. County of*

*Erie*, 654 F.3d 324, 327 (2d Cir. 2011), or prior, specific instances of similar unconstitutional

violations. *See Doe v. Kaplan*, No. 16-CV-9870, 2018 U.S. Dist. LEXIS 47954, 2018 WL

1449523, at *6 (S.D.N.Y. Mar. 22, 2018).

The Amended Complaint satisfies the responsibility and notice requirements since they

allege: 1) Warden Blackmon and Dr. Vessel created health care policy and were responsible for

addressing and remedying violations; and 2) Warden Blackmon and Dr. Vessel repeatedly

ignored Plaintiffs submitted reports and complaints. *Id.* at ¶¶14, 38, 55b, 57a. Plaintiffs also

allege the individual defendants were informed by public and private investigations, reports,

studies, and testimony that RMSC lacked appropriate guidelines and procedures to provide

chaperones for women prisoners undergoing medical exams. *See Id.* The Amended Complaint

alleges that, despite the notices, Defendants took no appropriate action. Therefore, the Amended

Complaint allows the Court to find it plausible that the individual defendants' deliberate

indifference to addressing Plaintiffs' complaints proximately violated Plaintiffs' constitutionally

protected rights. Thus, Plaintiffs established the individual defendants' liability and satisfy

*Colon.*

Accordingly, Defendants' motion to dismiss is denied with respect to Plaintiffs' § 1983

claims.

**III.    Class Action**

**A. Legal Standard**

When deciding a motion to certify a class, the allegations in the complaint are accepted as

true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).[9] To

_____

[9] "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974) (internal citations and quotation marks omitted).

bring a class action under Rule 23, a litigant must clear two hurdles: 1) satisfy all 23(a)

conditions and 2) satisfy one of 23(b)'s subsections. *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d

Cir. 1968); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245, 138 L.

Ed. 2d 689 (1997). Rule 23(a) requirements include:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims
> or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of
> the class.

Fed. R. Civ. P. 23(a). Courts refer to these four prongs as 'numerosity,' 'commonality,'

'typicality,' and 'adequacy.'" *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 98 (E.D.N.Y.

2012). Plaintiffs seek to certify a class under subsection 23(b)(2), which requires them to show

that Defendants "acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs must establish the Rule 23 requirements by a

preponderance of the evidence. *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).[10]

**B. Application**

     Plaintiffs Amended Complaint satisfies Rule 23(a)'s requirements. *See* Am. Comp. ¶ 66.

Defendants only challenge Plaintiffs' numerosity, commonality, typicality claims. The Court

will address each challenge in turn.[11]

1. **Numerosity**

---

[10] "In evaluating a motion for class certification, the district court is required to make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, and must resolve material factual disputes relevant to each Rule 23 requirement." *Id.* (internal quotation marks and citations omitted).

[11] The Amended Complaint is unclear as to whether Plaintiffs seek to represent all women at RMSC or only women who share their religious beliefs. Due to the First Amendment claim, the Court assumes at this stage of litigation Plaintiffs are seeking to limit the class to past and present Muslim prisoners at the RMSC.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. System v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014), as amended (Nov. 12, 2014).[12]

Here, Defendants claim Plaintiffs fail to show numerosity with respect to actual injury in the form of sexual assault or sexual harassment. Def.'s Mem. 24. However, as discussed above, Plaintiffs allege the actual injuries are not solely sexual assaults, but also other consequences of Defendants' deliberate indifference to their religious and medical requests. Furthermore, the Amended Complaint alleges "[t]he precise number of class members and their identities are unknown to Plaintiffs at this time but are believed to be in excess of 10,000 members." *Id.* at ¶ 66.b. Notwithstanding Plaintiffs' "10,000 members" estimation, it is plausible to assume there are more than forty women who may have suffered from Defendants' policy. Therefore, Plaintiffs have sufficiently alleged numerosity.

### 2. **Commonality**

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).[13] Defendant argues that Plaintiffs do not satisfy the commonality requirement

---

[12] *See also Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015), order amended and supplemented, 2019 U.S. Dist. LEXIS 71757, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ("While there is no magic minimum number to establish numerosity, courts in the Second Circuit generally presume that a class consisting of 40 or more members is sufficiently numerous.") (internal quotation marks omitted).

[13] "In other words, the relevant inquiry is whether a classwide proceeding is capable of generating common answers apt to drive the resolution of the litigation." *Jacob v. Duane Reade, Inc.*, 602 Fed. Appx. 3, 6 (2d Cir. 2015) (internal quotation marks, alteration, and citation omitted).

because "plaintiff K.A. does not allege cognizable injury within the limitations period, and plaintiff D.S. alleges very specific injury to herself, but not to the purported class." Def.'s Mem. 24. The Court disagrees.

The following common questions are all subject to class wide resolution: Whether the Defendants' policy, pattern, and practice of failing to provide women healthcare professionals and chaperones for intimate examinations is (a) unconstitutional, (b) subjects women prisoners to a substantial and unreasonable risk of sexual abuse and assault by male healthcare professionals, (c) subjects women prisoners to a substantial and unreasonable risk of harm due to delayed and/or denied access to timely medical care, and (d) whether the Defendants' policy, pattern, and practice places undue hardship on women prisoners' exercise of their sincerely held religious beliefs are all common questions subject to class-wide resolution. *See* Am. Comp. ¶ 66c.

Defendants' specificity argument fails as well. Indeed, although the physical injuries may vary—from the alleged sexual assaults to the consequences of foregoing medical care—the questions asked by each class member is subject to common resolution. *See Wal-Mart*, 131 S. Ct. at 2556 ("[F]or the purposes of Rule 23(a)(2) [e]ven a single [common] question will do.") (internal quotation marks and citation omitted)); *Barfield v. Cook*, No. 3:18-cv-1198 (MPS), 2019 U.S. Dist. LEXIS 131295, at *31 (D. Conn. Aug. 6, 2019).

Accordingly, Plaintiffs' sufficiently alleged commonality.

3. **Typicality**

Similarly, Defendants' typicality argument fails as well. Typicality requires that class representatives' claims "be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.*,

267 F.3d 147, 155 (2d Cir. 2001) (internal quotation marks and citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the Amended Complaint alleges that the same unlawful conduct—namely, Defendants' policy of denying prisoners access to women medical professionals despite requests—was directed at the named plaintiffs and the class sought to be represented. Furthermore, the Court has already rejected Defendants' exhaustion and standing arguments. *See* Sections I.A and II.A. Accordingly, Plaintiffs have sufficiently alleged typicality.

### 4. FRCP 23(b)(2)

Finally, Plaintiffs meet the requirements of Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Amended Complaint alleges, *inter allia*, that Defendants' policy, pattern and practices subject female prisoners in NYCDOC custody—the purported class—to a substantial and unreasonable risk of harm due to delayed and/or denied access to timely medical care. Am. Comp. ¶ 66.c. Therefore, Plaintiffs satisfy Rule 23(b)(2).

Accordingly, Defendants' motion to dismiss Plaintiffs' class action is denied.

### IV.   ADA and Rehabilitation Act Claims

### A. Legal Standard

To establish a violation of the ADA or Rehabilitation Act, a plaintiff must prove, "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to h[er] disability." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013). Though the ADA and the Rehabilitation Act "impose identical requirements," *see Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999), they require different showings of intentional discrimination to state a claim. *See Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001); *Harrell*, 2019 U.S. Dist. LEXIS 137487, at *52. A private suit for money damages under the ADA may only be maintained against a state if the plaintiff can establish that the violation was motivated by either "discriminatory animus or ill will due to disability." *Garcia*, 280 F.3d 108, 115.[14]

Though the ADA and the Rehabilitation Act "impose identical requirements," the latter demands a lesser showing of intentional discrimination. *Rodriguez*, 197 F.3d at 618; *Harrell*, 2019 U.S. Dist. LEXIS 137487, at *52. For Rehabilitation Act claims, "deliberate indifference remains the necessary showing". *Garcia*, 280 F.3d at 115. Thus, the Rehabilitation Act "reach[es] to knowing discrimination in the absence of animus." *Harrell*, 2019 U.S. Dist. LEXIS 137487, at *52 (quoting *Viera v. City of New York*, No. 15-CV-5430, 2018 U.S. Dist. LEXIS 169677, 2018 WL 4762257, at *14 (S.D.N. Y. Sept. 30, 2018)). However, "deliberate indifference must be a 'deliberate choice[,] rather than negligence or bureaucratic inaction.'" *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009) (citation omitted).

---

[14] The Second Circuit also requires "proof of discriminatory animus" for damages claims under the ADA based on an equal protection violation. *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016). *See also Stewart v. City of New York*, No. 15-CV-4335 (RA), 2018 U.S. Dist. LEXIS 56169, 2018 WL 1633819, at *4 (S.D.N.Y. Mar. 31, 2018).

Therefore, a plaintiff must show that "a policymaker acted with at least deliberate indifference to the strong likelihood" that implementing its policy or custom would violate federally protected rights. *Id.* at 275.

### B. Application

Here, Plaintiffs' ADA and Rehabilitation Act claims fail. Simply put, the Amended Complaint makes no factual allegations of any qualifying disability, nor any allegation of intentional discrimination based on such a disability. *See Varney v. Many*, No. 13-CV-5285, 2015 U.S. Dist. LEXIS 48933, 2015 WL 1730071, at *3 (S.D.N.Y. Apr. 14, 2015). Indeed, the Amended Complaint merely states that "the plaintiffs and some of the putative class members are 'qualified individuals with a disability'". Am. Comp. ¶ 79. However, Plaintiffs do not name a single disability fueling Defendants' alleged discrimination. Instead, Plaintiffs argue these claims should survive since it is plausible to conclude that at least some members of the purported class have a disability. Pl.'s Mem. 26. Though the Court is required to draw all reasonable inferences in Plaintiffs' favor, Plaintiffs' argument is unreasonable. Plaintiffs' ADA and Rehabilitation Act claims fail to show "more than a sheer possibility that a defendant has acted unlawfully," and thus, "stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs fail to state a claim for relief under the ADA or Rehabilitation Act.

Accordingly, Defendants' motion to dismiss Plaintiffs' Second Claim for relief is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss is DENIED in part and GRANTED in part. The Clerk of Court is respectfully directed to terminate the Motion at docket entry 37.

**SO ORDERED.**

**Dated: September 26, 2019**

**New York, New York**

**HON. ANDREW L. CARTER, JR.**
**United States District Judge**