**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **K.A., and D.S., individually and on behalf of a class of all others similarly situated,** | |
| *Plaintiffs*, | **1:18-cv-03858 (ALC)** |
| -against- | |
| **THE CITY OF NEW YORK, et. al.,** | **OPINION & ORDER** |
| *Defendants*. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs K.A. and D.S. are two women that were formally incarcerated at the Rose M. Singer Center ("RMSC") clinic facility at Rikers Island, and bring this action[1] alleging violations of their First and Eighth Amendment[2] rights against the City of New York, New York City Health and Hospitals Corporation, Physician Affiliate Group of New York, P.C., Warden Anastasia Blackmon, and Dr. "Jane" Vessell (collectively, "Defendants") arising from their medical care. ECF No. 1. Defendants now move for summary judgment. ECF No. 127.

After careful review, the Court **GRANTS** Defendants' summary judgment motion, ECF No. 127, on D.S.'s Eighth Amendment claims: D.S.'s claim for inappropriate touching of her breasts must be dismissed under the objective prong, and her claim for developing polyps as a result of not receiving gynecological care must be dismissed under the subjective prong. The Court **GRANTS** summary judgment for Defendants on K.A.'s Eighth Amendment claim under the objective prong.

---

[1] Defendants' summary judgment motion is limited to Plaintiffs' individual claims. The parties engaged in limited fact discovery regarding the individual claims of K.A. and D.S., and have stayed class and Monell discovery. ECF Nos. 84-85.

[2] Plaintiffs additionally argued Defendants violated their Fifth Amendment rights when they failed to provide adequate medical care. ECF No. 145 at 16. Because the Fifth Amendment claim was not raised in their First Amended Complaint ("FAC"), ECF No. 32, the Court will not analyze this claim.

1

The Court **DENIES** the motion with respect to Plaintiffs' First Amendment claims, and the Monell claim. The Court **DENIES** Defendants' motion to dismiss Dr. Vessell and Warden Blackmon from this action.

## BACKGROUND

### I. Statement of Facts

Plaintiffs K.A. and D.S. are former inmates previously confined to the custody and care of the New York City Department of Correction at RMSC located at Rikers Island. ECF No. 32, First Amended Complaint ("FAC") at ¶¶ 5, 37. K.A. was confined to the defendants' custody, control and care at RMSC from September 20, 2017 through April 2018. *Id.* at ¶ 56. Plaintiff D.S. was confined to the defendants' custody, control and care at RMSC from January 22, 2018 through April 18, 2018. *Id.* at ¶ 55. Both Plaintiffs arrived at RMSC with several serious ailments that required medical treatment. ECF No. 145 at 7, 9. D.S. was seen by medical practitioners 62 times in three and a half months, and K.A. was seen 12 times over six months. ECF No. 137 at 22.

Pursuant to a written policy ("Chaperone Policy"), the RMSC clinic requires chaperones for all medical exams of inmates undergoing an intimate examination involving the rectum, genitalia or breasts. Chaperone Policy, ECF No. 138-5. A provider must document the name of the chaperone present as a note in the patient's medical record. *Id.*; Colleen Vessell Dep., ECF No. 138-11 at 111:23-24. The policy includes a mechanism for providers to request a chaperone. *Id.* According to Dr. Vessell, who supervises RMSC doctors and physician assistants, it is the custom and practice of male providers to "generally want to have chaperones present" for every examination. Vessell Dep. 120:18-21. A chaperone is usually not called until the provider has determined the need for an exam. Dorlmarie Brown, Assistant Director of Nursing at the RSMC

clinic stated chaperones were present "all the time" for non-intimate examinations. Dorlmarie Brown Dep., ECF No. 138-12 at 43:18-21. Physician assistant ("P.A.") Saidu Jimoh stated he first speaks to a patient to determine the purpose of the visit, then requests a chaperone if he must conduct a physical exam that requires looking or feeling under a patient's clothing. Saidu Jimoh Dep., ECF No. 138-14 at 32:5-21. P.A. Edzer Roche likewise stated he always had a chaperone present for physical exams. Edzer Roche Dep., ECF No. 138-7, at 37, 40.

Although not included in the written policy, according to Dr. Vessell, patients can ask staff to request a chaperone be present. Vessell Dep. 37. But Ms. Brown testified that a "client will not request a chaperone." Brown Dep. 45:14-15. Rather, "doctors will call for a chaperone" and the nurses "will help chaperone." *Id.* 46:10-14.

Plaintiffs claim Defendants routinely denied and/or delayed Plaintiffs' access to timely medical care by failing to provide female chaperones to accompany Plaintiffs to intimate medical examinations, thereby:

> unnecessarily endangering the prisoner and needlessly requiring her to assume the risks associated with (a) waiting hours/days/weeks for a female doctor or chaperone to become available while risking the degenerative effects of prolonged lack of treatment for her medical condition or (b) proceeding with the unchaperoned examination while risking sexual assault, abuse and harassment by the male healthcare professional during the unchaperoned examination.

FAC at ¶¶ 1-2. Some providers would "get belligerent and they refuse[d] to even call a chaperone[.]" D.S. Dep., ECF No. 138-9 at 49:23-50:21.

Plaintiffs claim Defendants violated their First Amendment rights because Plaintiffs objected on religious grounds to medical treatment by male doctors without the presence of female chaperones, and Defendants denied them timely access to female doctors or chaperones. It was against K.A.'s religious beliefs "to be physically examined by a man who is not [her]

3

husband (including healthcare professionals) alone[.]" FAC at ¶ 30. Plaintiff D.S. stated she was spiritual, although she was not a "practicing anything" and:

> [N]o religion can dictate anything if I'm not a practicing member of the congregation . . . . The basis of my complaint is because it was inappropriate not because Islam dictated it, Muslims or Catholics, it was inappropriate. That's the basis. It's not based on a religious belief or none of that.

D.S. Dep. 77-79.

Plaintiffs claim Defendants' conduct amounted to cruel and unusual punishment in violation of the Eighth Amendment. K.A. and D.S. survived sexual abuse prior to their incarceration. During their time in RMSC, they claim they were sexually assaulted by male healthcare professionals during unchaperoned intimate examinations. FAC at ¶ 42. In 2016, K.A. filed a class action lawsuit *K.A., et al. v. City of N.Y., et al.*, 1:16-cv-04936-LTS (S.D.N.Y.), alleging P.A. Sidney Wilson sexually assaulted her and others between 2013 and 2015 at RMSC. FAC at ¶¶ 61-62; ECF No. 145 at 6. The suit arose out of K.A.'s incarceration at RMSC from approximately October 2013 through February 2015. ECF No. 145 at 6.[3]

On January 29, 2018, K.A. was "explicitly denied treatment and threatened with assault" by P.A. Edzer Roche after she requested a chaperone. K.A. Dep. 21:10-22:7. P.A. Roche was friends and coworkers with P.A. Wilson, and Roche blamed K.A. for Wilson's firing: he "was really like mad because I had pressed [] charges against Sidney." *Id.* 103:1-4; 142:14-22. Roche refused to call a chaperone after K.A. requested one, and he stated: "Either you're going to come in and sit down and let me examine you, or you're going to leave and you're not going to be seen." *Id.* 93:21-94:1. At no point during this incident did Roche have physical contact with K.A. ECF No. 144, Pl. 56.1 at ¶¶ 4-5. Plaintiff left without treatment because her religious beliefs did

---

[3] K.A.'s allegations against P.A. Wilson are not before the Court but provide important context for her experience at RMSC.

not allow examination by a male healthcare worker without a chaperone. K.A. Dep. 103:10-20. K.A. believed that during the examination Roche might "try to get back at me for what happened to Sidney, or he was going to ask me for something sexual, like a sexual favor." *Id.* 94:3-24. K.A. then returned to her cell, made a 311 complaint about the situation, and returned to the clinic to be seen by female doctor Marie Devezin. *Id.* 95:8-18. In her 311 complaint, K.A. reported that female correctional officer Russell was present during the incident. ECF No. 138-2, Transcript of 311 call, at 14.

D.S. claims mistreatment by three male providers: Roche, P.A. Saidu Jimoh, and Dr. Zamilus Gaetan. D.S. Dep. 52:13-15, 26:8-23, 117:24-118:16. On March 3, 2018, "D.S. was forced to be physically examined for ear pain by Dr. Gaetan and no chaperone was present." ECF No. 145 at 11. Approximately between January 30, 2018 and February 1, 2018, P.A. Roche twice touched D.S. inappropriately during examinations and no chaperone was present.[4] In the first instance, D.S. came in for a shoulder injury and Roche instructed her to raise her arm and "let me feel, tell me if this hurts[.]" D.S. Dep. 52:16-25. He "tend[ed] to move towards my breast and it was more like he was caressing me and not examining me." *Id*. D.S. did not ask for a chaperone, and did not report the first incident. *Id.* 53:6-7; 53:16-21. The second time, D.S. was seen by Roche but cannot recall the purpose of her visit. *Id.* 53-54. Roche pressed a stethoscope against D.S.'s chest and "dropped his arm down, like he kind of learned on me, but his hand accidentally or incidentally touched my breast, the way he position[ed] himself" and instructed D.S. to "to lift my shirt up so he can hear my breathing . . . . He was nasty." *Id.* 55:7-16. When asked whether she requested a chaperone for the alleged second incident with Roche, she

---

[4] D.S. does not recall the exact dates of the incidents, but medical records show she was thrice seen by Roche between these dates.

5

responded "I don't recall that. I don't remember. I severely doubt it because I was assessing was this real, did this man touch me this way, was I imagining." *Id.* 58:16-22.

D.S. does not recall the dates of her two inappropriate encounters with Roche. Her medical records show that there is only one recorded visit with Roche where physical contact was made, and that occurred on January 31, 2018. ECF No. 130-12 at 12-16. D.S. was seen by Roche due to a chemical spray incident in her housing unit, and Dr. Devezin was present as a chaperone. *Id.* Defendants contend D.S. thrice saw Roche at "Fast Track," a room with a window in which there is no physical contact between the patient and staff. ECF No. 136, Def. 56.1 ¶¶ 15, 92, 79. The Fast Track visits were on January 26, 2023, February 1, 2018, and March 27, 2018. ECF No. 137 at 12-13.

D.S. alleges Jimoh refused to provide her with a female doctor on March 2, 2018. ECF No. 143-2 at 9-11. But there is no medical record of D.S. being seen by Jimoh during the relevant time period. ECF No. 137 at 13.

On March 26, 2018, D.S. declined a gynecological exam despite bleeding and cramping when she was provided only a male doctor. D.S. Dep. 101:23-104:14; FAC at ¶ 55. D.S. contends she requested a female gynecologist "three or four times . . . for abdomen pain[.]" ECF No. 130-10 at 38-39; D.S. 101:23-104:14. The medical record states D.S. experienced a "feminine issue" but did not describe her symptoms. Pl. 56.1 ¶ 38. D.S. reported asking for a female gynecological doctor approximately three or four times, but did not receive one. D.S. Dep. 101-102. Because she declined to be seen by a male doctor, D.S. "continued to needlessly endure pain and suffering and deterioration of her condition." FAC at ¶ 55. There is no evidence that D.S. requested to reschedule with a female provider, or that she reported these symptoms to staff at a later time. She alleges she developed "massive polyps" in her small intestine as a result,

6

which required surgery after her release, and/or exacerbation of "massive fibroids[.]" D.S. Dep. 101:23-104:14; 104:15-105:6; ECF No. 130-10 at 38-39. But D.S.'s post-incarceration medical records do not memorialize a surgery, or polyps. ECF Nos. 130-15-130-19.

Dr. Vessell testified that in early 2018, she received complaints that providers were violating the chaperone policy from at least eight people, including K.A. and D.S., and that she did not speak to any of them. Vessell Dep. 140:17-141:3.

## II.    Procedural History

Plaintiffs filed their initial Complaint on April 30, 2018 against the City of New York, New York City Health and Hospitals Corporation, Physician Affiliate Group of New York, P.C., Warden Anastasia Blackmon, and Dr. "Jane" Vessell. ECF No. 1. Plaintiffs then amended their Complaint on August 15, 2018. ECF No. 32. Defendants moved to dismiss the FAC. ECF No. 37. On September 26, 2019, this Court dismissed Plaintiff's ADA and Rehabilitation Act Claims, and denied Defendants' motion to dismiss the class action and 42 U.S.C. § 1983 claims. ECF No. 44. On March 18, 2022, Defendants moved for summary judgment on Plaintiffs' individual claims. ECF No. 127. The Court considers this motion fully briefed.

## STANDARD OF REVIEW

### I.    Summary Judgment

Per Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to

the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (internal citations and quotation marks omitted).

## DISCUSSION

### I. Eighth Amendment Claim

To establish a claim for inadequate medical care under § 1983, a plaintiff must show that a defendant was deliberately indifferent to her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1997). A plaintiff must satisfy a two-prong test: 1) show the alleged deprivation was objectively "sufficiently serious[,]" (*see Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)); and 2) show the charged official acted with a sufficiently culpable state of mind. *Id.*

#### a. Objectively "Sufficiently Serious" Deprivation

To satisfy the objective prong, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). *See also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2010) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). A court may "focus on the challenged [temporary] *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone[.]" *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphases in original). Courts within the Second Circuit will examine a variety of factors including (1) "whether a reasonable doctor or patient would find the injury important and worthy of treatment," (2) "whether the medical condition significantly affects an individual's daily

9

activities," and (3) "whether the illness or injury inflicts chronic and substantial pain," *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Sexual abuse may constitute an Eighth Amendment violation, especially if the abuse "is 'severe *or* repetitive.'" *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)) (emphasis in original). The Court's "principal inquiry" "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Hayes v. Dahlke*, 976 F 3d 259, 275-76 (2d Cir. 2020).

That Plaintiffs often do not recall incidents with much or any specificity poses a challenge to assessing their claims. First, in their FAC, Plaintiffs claim they were forced to wait for extended periods of time, even hours, to be seen at the clinic. FAC at ¶¶ 1-2. See also K.A. Dep. 59:1; D.S. Dep. 43:25-44:1. But Defendants have set forth evidence that D.S. and K.A. received medical attention often during the relevant time period: D.S. was seen by medical practitioners 62 times in three and a half months, and K.A. was seen 12 times over six months. ECF No. 137 at 22. A review of K.A.'s medical records show that of 17 visits to the clinic, she waited to be called under one hour for 11 visits, and for several visits she waited less than 10 minutes. ECF No. 138-4. D.S.'s medical records indicate that of out of 27 visits to the clinic, she waited to be called under one hour for 17 visits, and under two hours for eight visits. ECF No. 143-5. These wait times do not indicate Defendants unnecessarily endangered Plaintiffs' health while waiting to be seen. Thus, Plaintiffs' claims that they were deprived of medical care by being forced to wait for excessive periods of time is contradicted by medical records, and cannot stand.

The Court next examines the substance of Plaintiff K.A.'s alleged injuries. At her deposition, Plaintiff K.A. specifically recalled suffering from cold symptoms of coughing and sneezing on January 29, 2018 and being seen by Roche, who refused to call a chaperone after K.A. requested one. There was no physical contact between her and Roche during this incident. Plaintiff declined treatment, returned to her cell, and lodged a complaint with 311. ECF No. 138-4. In her 311 complaint, K.A. reported that female correctional officer Russell was present during the incident. ECF No. 138-2, Transcript of 311 call, at 14. Shortly after, Plaintiff returned to the clinic and was seen by female doctor Devezin. *Id.* Plaintiff was first seen by Roche at 9:23 AM, and was then seen by Dr. Devezin at 10:17 AM. *Id.* At the threshold, K.A. ultimately and promptly being seen by a female doctor undercuts her Eighth Amendment claims for denial of timely medical treatment. K.A. complained of coughing and sneezing, and this short delay in being seen did not and could not "result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at 702. She received medical attention for her ailment within a reasonable time and cannot point to lasting enduring pain or deterioration of her condition stemming from this wait while incarcerated at RMSC, nor soon upon her release.

The Court next turns to Plaintiff D.S.'s alleged injuries. D.S. recalls two encounters during which Roche allegedly touched her breasts inappropriately and no chaperone was present. One incident occurred when D.S. sought treatment for a shoulder injury, and D.S. did not request a chaperone. D.S. Dep. 53:6-7. Roche instructed her to raise her arm and "let me feel, tell me if this hurts[.]" *Id.* 52:16-25. D.S. testified Roche "tend[ed] to move towards my breast and it was more like he was caressing me and not examining me." *Id.* The second incident occurred when Roche pressed a stethoscope against Plaintiff D.S.'s chest and "dropped his arm down, like he kind of learned on me, but his hand accidentally or incidentally touched my breast, the way he

11

position[ed] himself" and instructed D.S. to "to lift my shirt up . . . . He was nasty." *Id.* 55:7-16. Regarding the second incident, D.S. did not recall if she requested a chaperone. *Id.* 58:16-22.

Defendants have presented evidence that casts serious doubt on the veracity of D.S.'s alleged encounters with Roche. At the threshold, D.S. did not request a chaperone for the first incident, and possibly did not request one for the second, so D.S. cannot claim that Defendants denied her chaperone requests during these incidents. Additionally, D.S.'s medical records show that there is only one recorded visit with Roche where physical contact was made. This recorded visit occurred on January 31, 2018, and despite Plaintiff's claims that no chaperone was present during either incident, Dr. Devezin was present as her female chaperone on this date. ECF No. 130-12 at 12-16. The inconsistencies between the medical record and D.S.'s claims cast serious doubt on the veracity of her account. Assuming the incident happened, D.S. admits Roche's touching her breast may have been "accidental[]" or "incidental[.]" *Id.* 55:7-16. Even if the incidents did occur, Roche's touching of D.S.'s breasts inappropriately during the course of a physical examination does not rise to the level of severity necessary for an Eighth Amendment claim. The conduct was not "'severe *or* repetitive,'" *Crawford*, 796 F.3d at 25, and D.S. did not suffer lasting injury from this incident.

D.S. also contends she was denied gynecological care while in custody. However, D.S. was offered gynecological care but refused to be seen by a male doctor. D.S. appears to believe there were no female doctors in the gynecology unit. This is because she requested a female gynecologist "three or four times . . . for abdomen pain" but was not given one. ECF No. 130-10 at 38-39; D.S. Dep. 101:23-104:14. D.S. also stated her belief that the male "doctor they got been there for 17 years and they won't bring a new doctor in." D.S. Dep. 102:5-24; 103:16-19. However, Defendants have presented evidence that a female gynecologist was employed there

during the relevant time period. Vessell Dep. at 95. Plaintiff not being offered a female doctor three or four times is not sufficient to satisfy an Eighth Amendment claim for deprivation of care.

Plaintiff D.S. reported abdomen pain to prison officials, and states she suffered from a serious medical condition as a result of not receiving medical attention. She claims she developed "massive polyps" from her small intestine which required surgery after her release, and/or exacerbation of "massive fibroids[.]" D.S. Dep. 101:23-104:14; 104:15-105:6; ECF No. 130-10 at 38-39.

### b. Subjective "Excessive Risk to Health or Safety"

To satisfy the subjective prong, the defendants must "know, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). *See also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. "Not every claim of inadequate medical treatment made by a prisoner states a violation of the Eighth Amendment." *McFadden v. Morley*, No. 20-CV-06934-FPG, 2022 WL 268823, at *10 (W.D.N.Y. Jan. 28, 2022).

Because Plaintiff K.A. has not met her burden on the objective prong, and Plaintiff D.S. has not met her burden in on the objective prong in regard to Roche's alleged inappropriate touching, the Court need not consider whether Plaintiffs meet the subjective prong for these claims, and they must be dismissed. The remaining Eighth Amendment claim is Plaintiff D.S.'s allegation that she developed polyps as a result of not receiving gynecological care by a female doctor. However, D.S. only reported abdomen pain. There is no evidence that she ever reported her symptoms of bleeding and cramping to clinic staff. If Plaintiff did not report these symptoms,

it was impossible for Defendants to know she was experiencing them or to act to treat them. Therefore, even if Plaintiff did suffer as a result of not receiving gynecological care by a female doctor, it cannot be said that Defendants acted with deliberate indifference to her condition.

The Court **GRANTS** Defendants' summary judgment motion on D.S.'s Eighth Amendment claims: D.S.'s claim for inappropriate touching of her breasts must be dismissed under the objective prong, and her claim for developing polyps as a result of not receiving gynecological care must be dismissed under the subjective prong. The Court **GRANTS** summary judgment for Defendants on K.A.'s Eighth Amendment claim under the objective prong.

## II.     First Amendment Claim

Prison regulations allegedly impairing a prisoner's free exercise of religion are assessed "'under a reasonableness test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'" *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019). "[A] prisoner mounting a free-exercise challenge 'must show at the threshold that the disputed conduct substantially burdens [their] sincerely held religious beliefs.'" *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010) (summary order) (quoting *Salahuddin*, 467 F.3d at 274-75). "'The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.' Once defendants carry this burden of production, 'the burden remains with the prisoner to show that these articulated concerns were irrational.'" *Id.* (internal citations omitted).

However, the Supreme Court "reject[s] the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious

14

organization." *Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829, 834-35 (1989) Instead, the court must examine whether a plaintiff's actions were "based on a sincerely held religious belief" and if so, the plaintiff is "entitled to invoke First Amendment protection." *Id.* In *Jackson v. Mann*, the Second Circuit held that the question is whether a prisoner's beliefs are sincerely held, not whether they are actually members of a religious group. 196 F.3d 316, 321 (2d Cir. 1999) ("[T]he question [of] whether Jackson's beliefs are entitled to Free Exercise protection turns on whether they are 'sincerely held,' not on the 'ecclesiastical question' whether he is in fact a Jew under Judaic law. Courts are clearly competent to determine whether religious beliefs are 'sincerely held.'"); *Ford v. McGinnis*, 352 F.3d 582, 588-92 (2d Cir. 2003) (collecting cases).

Due to her Muslim faith, K.A. would not "be physically examined by a man who is not [her] husband (including healthcare professionals) alone[.]" FAC at ¶¶ 30, 55-57. While a court may not decide the correctness of a belief, it may inquire as to whether the party sincerely held the belief by examining extrinsic evidence. "[A]n adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief." *Int'l Society for Krishna Consciousness, Inc v. Barber*, 650 F2d 430, 441 (2d Cir. 1981) (internal citation omitted). In this case, Defendants challenge the sincerity of K.A.'s beliefs because she was sexually involved with P.A. Wilson and removed her clothing in his presence without the presence of a chaperone. In part, K.A. testified that:

> Now with Sidney it was different because I wanted to removed clothing; you know, I wanted to do it. But not with Edzer. You're not supposed to do it anyway. It's against the religion to do it, but we all do things we're not supposed to do. But I didn't want to with Edzer.

K.A. Dep. 103:10-20. When asked if her Muslim faith required a chaperone be present when she was seen by male healthcare workers, K.A. responded: "if you're not emotionally involved with the person, you know, you don't have any emotional or sexual attraction to the person, if you're

15

going to be examined, you're supposed to have someone there." *Id.* 118:21-25; 119:1-5. Defendants argue that K.A.'s decision to become sexually involved with P.A. Wilson undermines her allegation that her Muslim beliefs are sincerely held. It is undisputed that K.A. had sexual contact with Wilson. The parties disagree over the characterization of that involvement with Wilson. Defendants contend it was an affair, ECF No. 137, at 26-27, and Plaintiffs allege Wilson sexually assaulted K.A. FAC at ¶¶ 61-62; ECF No. 145 at 6. There are genuine disputes about material fact regarding K.A.'s relationship with P.A. Wilson. However, Defendants have not met their burden of showing K.A.'s beliefs were insincerely held. Because genuine disputes about material fact exist, summary judgment for Defendants on K.A.'s First Amendment claim is inappropriate.

      Plaintiff D.S. purports to share K.A.'s belief that she should be seen by a male doctor or P.A. only with a chaperone present. But, in her deposition, Plaintiff D.S. stated she was spiritual and not a practicing member of a religion, and "[t]he basis of my complaint is because it was inappropriate not because Islam dictated it . . . it was inappropriate. That's the basis. It's not based on a religious belief or none of that." D.S. Dep. 77-79. D.S. stated she believes "there's a power greater than me," D.S. Dep. 77:16-21. D.S. stated she studied multiple religious texts. *Id.* 77:17-78:23. Defendants claim they are entitled to summary judgment on D.S.'s First Amendment claim because she was not a member of a particular religious group. However, this does not doom her claim. Plaintiffs have not provided sufficient evidence that D.S.'s beliefs were not sincerely held. D.S. has shown she has studied religious texts. Genuine disputes about material fact exist.

      Credibility issues such as the sincerity of a party's religious belief are "quintessential fact questions" reserved "for the factfinder at trial, not for the court at summary judgment." *E.E.O.C.*

16

*v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 56 (1st Cir. 2002) (internal citations and quotation marks omitted).

Plaintiffs have sufficiently alleged that Defendants "substantially burdened their sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75. Defendants had the burden of linking "legitimate penological interests" to denying Plaintiffs' requests, but this issue was not adequately addressed in the moving papers. Defendants' summary judgment motion as to the First Amendment claim is **DENIED**.

### III. Claims Against Individual Defendants

"It is well-settled in this Circuit that the personal involvement of defendants in a constitutional violation is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "'Personal involvement' is defined as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts, rather than doing them him – or herself.'" *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Personal involvement of a supervisory defendant includes:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

It is undisputed that Defendants did not have actual direct participation in the violation of Plaintiffs' constitutional rights. "A defendant in a supervisory position cannot be held liable under Section 1983 under a theory of *respondeat superior*." *Valverde v. Folks*, No. 1:19-CV-08080-MKV, 2020 WL 5849515, at *4 (S.D.N.Y. Sept. 30, 2020), *aff'd*, No. 22-848-PR, 2023

WL 2439876 (2d Cir. Mar. 10, 2023) (citing *Hernandez*, 341 F.3d at 144). "[A] defendant cannot be held liable merely because he occupied a supervisory position." *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013). "Receipt of letters or grievances . . . is insufficient to impute personal involvement." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Otherwise, "virtually every prison inmate who sues for constitutional torts by [prison officials] could name the [supervisor] as a defendant." *Voorhees v. Goord*, No. 05-CIV-1407, 2006 U.S. Dist. LEXIS 48370, 14-15 (S.D.N.Y. Feb. 24, 2006).

Plaintiffs contend Warden Blackmon and Dr. Vessell can be held liable for alleged conditional violations because they received complaints from Plaintiffs, and failed to act to remedy the violations (prongs two and five). FAC at ¶¶ 38, 55, 57. Dr. Vessell testified that in early 2018, she received complaints that providers were violating the chaperone policy from at least 8 people, including K.A. and D.S., and did not speak to any of them. Vessell Dep. 140:17-141:3. For example, Dr. Vessell concluded without speaking to K.A that K.A. was seen and examined on January 29, 2018, and did not follow up on her 311 complaint. *Id.* 112:8-23; 130:6-12. Plaintiffs contend Dr. Vessell then "fail[ed] to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145. "By Dr. Vessell's own testimony and policies, it is imperative to speak to the complainant, and her blatant and flagrant indifference to her own policy shows a gross disregard of known constitutional violations." ECF No. 145 at 29. "Receipt of letters or grievances" may be insufficient to impute personal involvement, *Sealey*, 116 F.3d at 51, but Warden Blackmon and Dr. Vessell, as supervisors, were aware of the complaints, and had a greater duty to address complaints made against providers they supervised. *See Hernandez*, 341 F.3d at 145 (dismissing claim when plaintiff did not allege

18

supervisor was aware of any unconstitutional policy, practice or act). Here for example Dr. Vessell acknowledges she received the complaints. Vessell Dep. 140:17-141:3.

However, the fact that Blackmon and Dr. Vessell failed to act on Plaintiffs' complaints that potentially unconstitutional acts were occurring weighs in favor of finding Blackmon and Dr. Vessell liable.

The Court **DENIES** Defendants' request to dismiss Dr. Vessell from this action. Because the Court has stayed *Monell* and class discovery until this summary judgment motion on Plaintiffs' individual claims is decided, and Warden Blackmon has not been deposed, the Court **DENIES** the motion with respect to Warden Blackmon.

### IV. Monell Claim

A plaintiff seeking municipality liability under 42 U.S.C. § 1983 must show: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." *Aquino v. City of N.Y.*, 16-CV-1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). Monell "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993).

In this case, Plaintiffs have alleged there was a policy of denying prisoners chaperones, which forced them to decline medical attention. The Court has stayed *Monell* discovery pending resolution of the summary judgment motion on Plaintiffs' individual claims. ECF Nos. 61, 82, 85. The Court has found Plaintiffs' First Amendment claims must stand. Therefore, Plaintiffs

have established a potential violation of a constitutional right. As such, Defendants' motion for summary judgment on the Monell claim is premature and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' summary judgment motion, ECF No. 127, on D.S.'s Eighth Amendment claims: D.S.'s claim for inappropriate touching of her breasts must be dismissed under the objective prong, and her claim for developing polyps as a result of not receiving gynecological care must be dismissed under the subjective prong. The Court **GRANTS** summary judgment for Defendants on K.A.'s Eighth Amendment claim under the objective prong.

The Court **DENIES** the motion with respect to Plaintiffs' First Amendment claims, and the Monell claim. The Court **DENIES** Defendants' motion to dismiss Dr. Vessell and Warden Blackmon from this action. The Court **GRANTS** summary judgment for Defendants on K.A.'s Eighth Amendment claim.

**SO ORDERED.**

Dated: September 29, 2023
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**